**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Christopher James ANDERSON,**
**Defendant–Appellant.**

**United States of America,**
**Plaintiff–Appellee,**

v.

**Carlos Anthony Miranda, a.k.a.**
**Pico, Defendant–Appellant.**

**Nos. 98–50238, 98–50239**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 2, 1999

Filed Jan. 25, 2000

Kenneth M. Miller, Santa Ana, California, for defendant-appellant Anderson.

Mark R. Lippman, La Jolla, California, for defendant-appellant Miranda.

Michael Terrell, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: BOOCHEVER and T.G. NELSON, Circuit Judges, and WARE,[1] District Judge.

BOOCHEVER, Circuit Judge:

Christopher James Anderson and Carlos Anthony Miranda, inmates at Lompoc Federal Corrections Institute, were convicted of voluntary manslaughter in the stabbing death of another inmate. On appeal, they raise a number of issues, including whether it was plain error not to instruct the jury on the lesser included offense of involuntary manslaughter. We conclude that the failure to give an involuntary manslaughter instruction was plain error, and we reverse.

## FACTS

Christopher James Anderson and Carlos Anthony Miranda were prisoners in the Lompoc Federal Corrections Institute during 1993. Another prisoner, William Miller, regularly smuggled heroin into the prison, and provided some of the drug to Anderson and Miranda. Miller kept some of the heroin for himself.

Miller's cellmate, James Jackson, told Miller that Anderson and Miranda were planning to steal Miller's heroin. Miller confronted Anderson, who denied that he had planned to steal Miller's drugs. Miller would not tell Anderson who alerted Miller, but Anderson and Miranda suspected Jackson. When Jackson found out that his cellmate Miller had talked to Anderson he became very angry, hitting Miller and giving him a black eye. When Anderson saw Miller's black eye, he told Miller that Jackson had no right to hit him and that he (Anderson) could not allow anyone to damage his reputation. Anderson and Miranda discussed the situation. Miranda showed his cellmate, Anthony Hernandez, a knife and told him he planned to kill Jackson with it, although Hernandez also testified that Miranda later changed his

---

1. Honorable James Ware, United States District Judge for the Northern District of California, sitting by designation.

mind and agreed he would not. There also was testimony that Jackson had a knife.

On the morning of February 8, 1993, Anderson and Miranda entered Jackson's cell just before the 9:00 a.m. movement of prisoners. A struggle over a knife ensued. Jackson later died of a deep stab wound in his chest, and also had puncture wounds in his buttock, thigh, and lower legs.

Miranda and Anderson fled Jackson's cell. Anderson threw his knife out of his cell window. Miranda gave Anderson the knife that had stabbed Jackson, and Anderson gave the knife to another inmate, who threw it out of a window to dispose of it.

Miranda and Anderson each were indicted for murder and conspiracy to murder. At trial, Miranda testified that he did not take a weapon into Jackson's cell. Miranda testified that Jackson grabbed for a knife when Miranda entered the cell. Miranda ran at Jackson and struggled for control of the knife. Miranda testified that Jackson fell on his bunk and was stabbed on the way down.

Anderson testified that he went to Jackson's cell with Miranda to talk to Jackson, carrying a pick knife because he thought Jackson had threatened him earlier. When Anderson saw Miranda and Jackson struggling for the knife, Anderson testified that he feared for his life. He testified that he grabbed Jackson's legs to get him down and stabbed him with the pick knife to distract Jackson so Miranda could get control of the knife.

At the first trial, the jury reached an impasse in its deliberations and the court declared a mistrial. After a second trial, beginning in November 1997, the jury found Miranda and Anderson not guilty of conspiracy or murder, but guilty of the lesser included offense of voluntary manslaughter.

At sentencing in March 1998, the district court sentenced each defendant to 120 months imprisonment, to be served consecutively to his prior sentence.

## I. *Involuntary manslaughter instruction*

Anderson and Miranda assert that the district court should have instructed the jury on the lesser included offense of involuntary manslaughter. They claim they raised the issue before the district court; the government denies this.

### A. *Standard of Review*

■ This court reviews de novo whether the offense for which an instruction was requested is actually a lesser included offense of the offense charged, and reviews for an abuse of discretion whether a jury could have found that the defendant was guilty of the lesser included offense but not of the greater. *See United States v. Vaandering*, 50 F.3d 696, 703 (9th Cir. 1995). If the defendant did not request the lesser included offense instruction or does not object to its omission, we review only for plain error. *See United States v. Montgomery*, 150 F.3d 983, 996 (9th Cir. 1998).

■ Anderson and Miranda were charged with conspiracy to murder under 18 U.S.C. § 1117 and with first degree murder under 18 U.S.C § 1111(a), which proscribes "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1112(a) proscribes manslaughter:

> Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:
>
> Voluntary–Upon a sudden quarrel or heat of passion.
>
> Involuntary–In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

Voluntary and involuntary manslaughter are lesser included offenses of murder. *See United States v. Quintero*, 21 F.3d 885, 889 (9th Cir.1994); *United States v. Skinner*, 667 F.2d 1306, 1309–10 & 1309 n. 1 (9th Cir.1982) (per curiam).

■ At the first trial, the defense submitted joint proposed jury instructions which included a lesser offense instruction listing (but not defining) involuntary manslaughter. The government argued that a lesser included offense instruction should require the jury first to decide whether the defendants were guilty of the charged offense, before considering any lesser included offenses. Stating that it had no objection to an instruction including second degree murder and voluntary manslaughter, the government offered to prepare an instruction "which includes both second degree murder and voluntary manslaughter," and the defense acquiesced ("That's fine, Your Honor."). The first trial's jury instructions did not include either a mention of or a definition of involuntary manslaughter, and there was no further discussion of its inclusion. So while defense counsel at the first trial submitted a joint instruction which mentioned involuntary manslaughter, counsel apparently made no attempt to define the offense, and did not object to its omission when the instructions were redrafted.

At the second trial, Miranda represented himself,[2] and the same jury instructions were submitted. Again there was no objection to the absence of an involuntary manslaughter instruction. The government therefore claims review is for plain error.

Miranda disagrees that plain error applies. He claims that the record shows that at the second trial the prosecutor acknowledged that the defense had proffered such an instruction, and therefore the prosecutor had an obligation to bring the issue of involuntary manslaughter to the court's attention. Miranda apparently believes this prosecutorial obligation should serve as the equivalent of a defense objection.

The record is ambiguous on this point. At the second trial, the prosecutor explained an instruction defining heat of passion by stating that the definition referred to a previous instruction which "uses the term 'heat of passion' in referring to the lesser included offenses; one of the lesser included offenses being involuntarily [sic] manslaughter." There is no discussion of involuntary manslaughter, and given the context, it seems likely that the prosecutor meant to say voluntary manslaughter (which can occur in a heat of passion). This exchange therefore appears to be entirely irrelevant to the involuntary manslaughter issue. But even if the prosecutor did intend to refer to involuntary manslaughter, the defense did not properly object, at the first trial or at the second, to the omission of an instruction on voluntary manslaughter.

> To have preserved his right to appellate review ... [defendant] must have objected before the jury retired, stating *distinctly* the matter to which he objected and the *grounds* of the objection. Offering an alternative instruction alone is not enough; the district court must be fully aware of the objecting party's position.

*United States v. Williams*, 990 F.2d 507, 511 (9th Cir.1993) (quotations omitted) (emphasis in original). We therefore review the omission of the instruction for plain error.

## B. *Plain Error*

■ We may correct plain error if first, there is an actual error, and second, the error is plain, or "clear" or "obvious."

---

2. Miranda had filed a motion to substitute counsel. At a hearing the day before the second trial began, Miranda claimed he could not work with his present counsel (who had represented him in the first trial). The court denied the motion to substitute counsel, but Miranda refused to proceed with his present counsel. The court then denied his motion to proceed pro se.

The first day of trial, Miranda renewed his pro se motion. The court then allowed Miranda to proceed pro se, with his present counsel as "advisory" or "standby" counsel. As counsel described it, that meant that she could "assist the defendant and the court in technical matters in preserving the right for appeal. I do not argue motions; I don't make motions; and, basically, I'll be mute."

*United States v. Sayetsitty,* 107 F.3d 1405, 1411 (9th Cir.1997) (citing *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). "Third, the error must have affected 'substantial rights,' which typically means that the error must have been prejudicial." *Id.* Fourth, we may " 'exercise [our] discretion to notice a forfeited error ... only if ... the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " *United States v. Barajas–Montiel,* 185 F.3d 947, 953 (9th Cir.1999) (quoting *Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).

### 1. *Actual error.*

■■■ The failure to instruct on involuntary manslaughter was error if there was evidence in the record to support the theory that the killing was accidental. "An accidental killing may be second degree murder, manslaughter, or no crime at all." *United States v. Lesina,* 833 F.2d 156, 160 (9th Cir.1987) (citing *Thomas v. United States,* 419 F.2d 1203, 1205 (D.C.Cir.1969)).

> If the defendant killed with the mental state required for murder (intent to kill or recklessness with extreme disregard for human life), but the killing occurred in the "heat of passion" caused by adequate provocation, then the defendant is guilty of voluntary manslaughter. The finding of heat of passion and adequate provocation negates the malice that would otherwise attach. By contrast, the absence of malice in involuntary manslaughter arises not because of provocation induced passion, but rather because the offender's mental state is not sufficiently culpable to meet the traditional malice requirements. Thus, involuntary manslaughter is an unintentional killing that evinces a wanton or reckless disregard for human life but not of the extreme nature that will support a finding of malice.

*United States v. Paul,* 37 F.3d 496, 499 (9th Cir.1994) (internal citations and quotations omitted).

■■ Even when the evidence is conflicting, if any construction of the evidence and testimony would rationally support a jury's conclusion that the killing was unintentional or accidental, an involuntary manslaughter instruction must be given. When the defendant maintains that the killing was unintentional, the instruction is necessary even when there is also testimony by others that the defendant stated his intention to kill the deceased. *See Thomas,* 419 F.2d at 1205–06 & n. 4 (where defendant maintained that victim was accidentally shot in scuffle over gun in victim's pocketbook, involuntary manslaughter instruction was required despite evidence of expressed intent to kill because "a one-sided view of the evidence is obviously improper"); *United States v. Browner,* 889 F.2d 549, 553–55 (5th Cir.1989) (where defendant stabbed husband and asserted she intended to threaten but "the stabbing itself was an accident," and jury could have concluded she was grossly negligent in swinging the knife, she was entitled to involuntary manslaughter instruction). As this circuit held in *Paul,* when evidence is presented in support of an accidental death theory, the instructions given must "explain that involuntary manslaughter is an unintentional killing." 37 F.3d at 500–01.

At the second trial, Miranda and Anderson testified that they went to see Jackson on the morning of the killing to resolve the dispute over the purported plan to steal Miller's drugs. Miranda testified that he did not take a weapon with him because "I thought if I took a weapon and [Jackson] seen a weapon, that would have been it. Why even go talking with a weapon?" Anderson took a pick knife because Jackson had threatened him earlier.

■■ When Miranda entered the cell, Jackson was standing by his bed with a blanket over his left arm. When Jackson saw Miranda, Jackson looked shocked and grabbed for a knife with his right hand. Miranda testified that he ran at Jackson and grappled Jackson for the knife with

his right hand, so that both Jackson and Miranda had their hands on the knife handle. When Jackson fell back on the bed, Miranda testified, "it seemed like one motion, one motion, just-I don't even remember it hitting his face or nothing, but it just seemed like one motion, boom, it just went in his chest."

Miranda claimed that "the furthest thing from my heart, from my mind, was what happened was going to happen" when he entered the cell, and that afterward "I was in shock." On cross-examination, Miranda repeated, "My goal was just not to get hurt, to get out of there" and that "when [Jackson] picked [the knife] up, and when we were struggling for it, it could have hit me, or it could have hit him." He concluded, "In my wildest dreams, I never wanted this to happen, and it was a tragedy." In his closing argument, Miranda reiterated that he had no intent to kill, that he was "in shock" after he left Jackson's cell, and that the stab wounds showed that when Jackson "hit the bed [the knife] went down in the middle of his chest." Miranda stated, "I didn't kill that man on purpose.... I didn't do it on purpose, ladies and gentlemen."

Anderson testified that he entered the cell behind Miranda. When Anderson saw Miranda and Jackson struggling for the knife, he grabbed Jackson's legs and began to stab Jackson in the legs with the pick knife to distract him. Anderson stated, "I think [Jackson] fell on that knife is what I think."

There was also testimony at trial identifying the knife that killed Jackson as his own.

There was thus evidence in the record to support the theory that the killing was accidental, and it was error to fail to give an involuntary manslaughter instruction.[3]

■ The government argues that the defense theory was that the killing was done in self-defense, and that because a

killing in self-defense is intentional, such a killing cannot constitute involuntary manslaughter. But self-defense and involuntary manslaughter are not mutually exclusive. A defendant who intends to use non-deadly force to protect himself, but who uses that force in a criminally negligent way resulting in death, could be found guilty of involuntary manslaughter. As we have explained:

> [Involuntary manslaughter] can occur in circumstances that would support a defense of self-defense. The example most easily conceived is where the defendant is assaulted but does not have a reasonable apprehension of suffering great bodily harm or death, and is therefore privileged to use force, but only non-deadly force, in self-defense. If the defendant attempts to use non-deadly force, but does so in a criminally negligent manner and death results, then both involuntary manslaughter and self-defense instructions would be warranted, particularly if there is any disputed fact issue concerning the quantum of danger reasonably perceived by the defendant. This situation must be distinguished from the typical case of "imperfect self-defense," in which the defendant intends to use deadly force in the unreasonable belief that he is in danger of death or great bodily harm. In this circumstance, the offense is classed as voluntary manslaughter.

*United States v. Manuel,* 706 F.2d 908, 915 (9th Cir.1983) (distinguishing *United States v. Skinner,* 667 F.2d 1306 (9th Cir. 1982)); *see also United States v. Benally,* 146 F.3d 1232, 1237 (10th Cir.1998) (involuntary manslaughter instruction must be given when evidence supports the criminally negligent exercise of non-deadly force); *United States v. Begay,* 833 F.2d 900, 901–02 (10th Cir.1987) (same). The evidence in this case could support a jury finding that Miranda and Anderson were privileged to

---

3. Curiously, in her closing argument Anderson's attorney referred at least six times to the lesser included offense of *"in voluntary*

manslaughter" (emphasis added), although she gave the elements of voluntary manslaughter.

use non-deadly force against Jackson's imminent assault, and attempted merely to wrest the knife from his control, but did so in a criminally negligent manner resulting in death. This would be entirely consistent with the defendants' testimony throughout the trial that they did not intend to kill Jackson. An instruction on involuntary manslaughter was thus required, and it was error not to give the instruction.

### 2. Clear error.

██ As indicated in the preceding section, it is clear from the case law that where there is evidence that the victim's death was accidental, an instruction explaining the mental state necessary for involuntary manslaughter is necessary. *See Paul,* 37 F.3d at 500 (in 1993, "it was clear and obvious under the case law that such an instruction was required"); *Manuel,* 706 F.2d at 915 (involuntary manslaughter instruction required when defendant attempts to use non-deadly force in self-defense in a criminally negligent manner). Thus the failure to instruct on involuntary manslaughter was obvious error.

### 3. Substantial rights/prejudice.

██ In *Paul,* this court found that the failure to instruct on the mental state requirements for voluntary and involuntary manslaughter was prejudicial because it "created a substantial risk that [defendant] was convicted of voluntary manslaughter, even though the jury may have believed the killing was neither intentional nor extremely reckless." 37 F.3d at 500; *see United States v. Shortman,* 91 F.3d 80, 82 (9th Cir.1996) (plain error to fail to instruct on "gross negligence" in close case charging involuntary manslaughter). Prejudice is even more likely in this case, as the jury received no instruction at all on the lesser included offense of involuntary manslaughter, increasing the risk that Miranda and Anderson were convicted of voluntary manslaughter because under the instructions as given, the only alternatives were to convict of murder or to acquit entirely. An error that results in a longer sentence undoubtedly affects substantial rights. *See United States v. Martinez–Rios,* 143 F.3d 662, 676 (2d Cir.1998). Involuntary manslaughter carries a shorter maximum sentence (six years) than voluntary manslaughter (ten years). *See* 18 U.S.C. § 1112(b). Anderson and Miranda each received the maximum ten-year sentence for voluntary manslaughter.

### 4. Fairness, integrity or reputation of judicial proceedings.

██ Our plain error analysis does not end with our conclusion that there was error, that the error was obvious, and that the error affected substantial rights. Before we exercise our discretion to correct the error, we must determine "whether the forfeited error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Johnson,* 520 U.S. at 469, 117 S.Ct. 1544 (quotations omitted) (alteration in original). "In conducting our review of this element, we consider all circumstances at trial including the strength of the evidence against the defendant," *United States v. Perez,* 116 F.3d 840, 847 (9th Cir.1997) (en banc) (quotations omitted), and the strength of the evidence in support of the element omitted from the instructions. *See Johnson,* 520 U.S. at 470, 117 S.Ct. 1544.

██ A failure to give a jury instruction, even if in error, does not seriously affect the fairness and integrity of judicial proceedings if the defense at trial made no argument relevant to the omitted instruction. For example, where jury instructions did not include an instruction on the specific intent required for conviction of alien smuggling, we declined to find that the integrity of the proceedings was thrown into question because the defendant never argued that she did not intend to violate the immigration laws. *See Barajas–Montiel,* 185 F.3d at 953; *see also Johnson,* 520 U.S. at 470, 117 S.Ct. 1544 (erroneous instruction on materiality had no serious effect on integrity of proceedings where "petitioner has presented no

plausible argument" that her false statement was not material). In this case, by contrast, Miranda and Anderson both testified that they had not intended to kill Jackson, and that Jackson was stabbed when Miranda grabbed for Jackson's knife, with Anderson holding Jackson down to help Miranda gain control of the knife.

The government characterizes this testimony as evidence not of involuntary manslaughter, but of self-defense, for which an instruction was given. But "circumstances that would support a defense of self-defense" may also support a conviction for involuntary manslaughter, when a defendant attempts to use non-deadly force but does so in a criminally negligent manner, resulting in death. *Manuel,* 706 F.2d at 908. The circumstances described by the defendants' testimony lend themselves to such an interpretation. Miranda testified that he grabbed the knife to get control of it, not in order to stab Jackson in self-defense, and that the fatal wound occurred in the course of the struggle for control. Anderson's testimony was similar, as he testified that "I think [Jackson] fell on that knife." It is thus consistent with the evidence that the killing was "an unintentional killing that evinces a wanton or reckless disregard for human life but not of the extreme nature that will support a finding of malice." *Paul,* 37 F.3d at 499 (quotations omitted).

Further, the evidence supporting the offense of conviction-voluntary manslaughter-was not so overwhelming as to eliminate the possibility that the jury, on the evidence presented, might have chosen to convict for involuntary manslaughter with its less severe sentence. *See Barajas–Montiel,* 185 F.3d at 953 (no serious question as to integrity of proceedings where evidence overwhelmingly demonstrated the intent erroneously omitted from instructions); *United States v. Leon–Reyes,* 177 F.3d 816, 823 (9th Cir.1999) (prosecutor's comments did not affect fairness of proceedings where evidence of guilt was overwhelming). The jury was instructed that voluntary manslaughter required no premeditation, but did require that the

defendant act on a sudden quarrel or heat of passion. A defendant arguing voluntary manslaughter "attempts to negate the malice element by claiming, in essence, that she was not acting maliciously because some extreme provocation, beyond what a reasonable person could be expected to withstand, severely impaired her capacity for self-control in committing the killing." *United States v. Quintero,* 21 F.3d 885, 890 (9th Cir.1994).

Neither Miranda nor Anderson testified that he was provoked beyond control when Jackson was stabbed. Nor did they testify that the physical altercation was sufficient provocation to make them lose control. *See United States v. Wagner,* 834 F.2d 1474, 1487 (9th Cir.1987) ("sudden quarrel" mitigates culpability only if altercation causes heat of passion). Instead, they testified that the stabbing was an accident during the struggle, a claim that is not inconsistent with the evidence. *Cf. id.* at 1489–79 (not plain error to fail to give involuntary manslaughter instruction where the evidence is inconsistent with the crime, as defendant pulled own knife and chased other inmate, stabbing him to death). The evidence of voluntary manslaughter thus was not overwhelming. And the government's theory was that the killing was a planned and premeditated first-degree murder, as summarized in its opening statement that Miranda and Anderson "did not kill James Jackson by accident or self-defense, but instead they planned this murder in advance." The government also maintained that the defendants did not act in the heat of passion. When the evidence linking the defendant to the crime is not strong, we have found a serious effect on the integrity and public reputation of the proceeding. *See Guam v. Veloria,* 136 F.3d 648, 653 (9th Cir.1998).

In short, Miranda's and Anderson's testimony was substantial evidence that the killing was an accident in the course of a struggle for control over Jackson's knife. Yet because there was no jury instruction on involuntary manslaughter, the jury was

without guidance on how federal law treats such an accidental killing.

We have reversed for plain error in similar circumstances. In *Paul*, the defendant killed his wife during a fight. At trial he argued her death was an accident, but the jury was not instructed that an accidental killing is involuntary manslaughter. 34 F.3d at 500–01. Because the defective instruction created a substantial risk that the defendant was wrongly convicted of voluntary manslaughter, we reversed.

In this case, the failure to give an involuntary manslaughter instruction also created the risk that the jury chose the least of the lesser included offenses contained in the instructions as given, and wrongfully convicted Miranda and Anderson of voluntary manslaughter. The instructions deprived Miranda and Anderson of their right to have the jury consider whether their version of events-that the killing was accidental-entitled them to a conviction of the lesser offense of involuntary manslaughter.

Our concern with the "fairness, integrity or public reputation of judicial proceedings" is intensified by an additional issue. Virtually all the physical evidence in this case was lost on the way back to Los Angeles after analysis by the Federal Bureau of Investigation laboratory in Washington, D.C., and was unavailable during both trials. The lost evidence included both knives and other important physical evidence. For example, whether the knife that killed Jackson was Miranda's or Jackson's own weapon would be crucial to Miranda's argument that he did not bring a knife into Jackson's cell and that the killing occurred during the struggle for control of the victim's knife. The lack of

access at trial to this evidence adds to our concern about the integrity of these judicial proceedings. That concern can be mitigated by reversing and remanding for another trial. After briefing for this appeal was complete but before oral argument, the government located the missing evidence. The physical evidence will thus be available on retrial.

We do not lightly exercise our discretion to find plain error and to conclude that the omission of an involuntary manslaughter instruction "seriously affected the fairness, integrity, or public reputation" of Miranda and Anderson's trial.[4] Our review of the record and the circumstances of the trial convince us that the integrity of the judicial proceedings can best be ensured by reversal, subject to retrial with proper instructions and the physical evidence that was unavailable at the second trial.[5]

We therefore reverse Miranda's and Anderson's convictions.

REVERSED.

---

**4.** We are mindful of this court's caution in *Wagner* that the defense may strategically choose to omit an involuntary manslaughter instruction to improve the chances of acquittal if the government proceeds on a murder theory. *See Wagner*, 834 F.2d at 1488 n. 14. In this case, however, the defendants simply submitted the same instructions as those submitted at the first trial. At least as far as Miranda is concerned, it is unlikely that a pro

se defendant would operate so strategically, and the facts in this case are much more supportive of an involuntary manslaughter theory than those in *Wagner*.

**5.** Because our decision that the failure to give an involuntary manslaughter instruction was plain error is dispositive, we do not address the other issues raised in appellants' briefs.