**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kayle NORDBY, Defendant–Appellant.**

**No. 99–10191.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 2000

Filed Sept. 11, 2000

---

J. Douglas Wilson, Jonathan Schmidt, Assistants United States Attorney, San Francisco, California, for the plaintiff-appellee.

Linda M. Leavitt, San Francisco, California, for the defendant-appellant.

Before: CANBY, REINHARDT, and FERNANDEZ, Circuit Judges

Opinion by Judge CANBY; Dissent by Judge REINHARDT.

CANBY, Circuit Judge:

In this case we are called upon to apply the Supreme Court's recent decision in *Apprendi v. New Jersey*, —— U.S. ——, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi* held that a fact that increases the prescribed statutory maximum penalty to which a criminal defendant is exposed must be submitted to a jury and proven beyond a reasonable doubt. *Id.* at 2362–63. We hold that the amount of drugs for which a defendant is sentenced under 21 U.S.C. § 841(b)(1) is such a fact, and that our existing precedent to the contrary is overruled to the extent that it is inconsistent with *Apprendi*.

Kayle Nordby was convicted and sentenced under 21 U.S.C. §§ 841 and 846, but a jury never determined beyond a reasonable doubt the quantity of drugs for which he was responsible. Instead, a judge made that determination at sentencing and did so under the standard of preponderance of the evidence. The judge's determination increased the prescribed statutory maximum to which Nordby was exposed beyond that supportable by the jury's findings; in Nordby's case the judge's finding increased Nordby's maximum exposure from five years to life imprisonment. Moreover, Nordby was sentenced to ten years in prison, a term that exceeds the five year maximum supported by the jury's findings. We therefore vacate Nordby's sentence and remand for imposition of a sentence not to exceed the statutory maximum applicable to the facts as found by the jury beyond a reasonable doubt.

## FACTUAL BACKGROUND

On September 28, 1993, federal and state police searched four properties in Humboldt County, California. On two of the parcels owned by Kayle Nordby, police found thirty-one outdoor marijuana gardens containing 2,308 marijuana plants as well as an indoor growing shed that had been used to grow marijuana. Police subsequently arrested Nordby, Cory Marchese, Terry Medd, Jeb Stafslien, and Sam Stafslien, and they were indicted for conspiracy to possess with intent to distribute marijuana, manufacture of marijuana, and possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. The counts for manufacture and possession with intent to distribute specified 2308 marijuana plants. The conspiracy charged in the indictment was alleged to have run from "on or about August 1, 1993, and continu[ed] to on or about September 28, 1993."

At Nordby's trial, the district court instructed the jury that it need not determine the amount of marijuana that Nordby manufactured, possessed or conspired to possess with intent to distribute. Instead, the jury was instructed that "the government is not required to prove the amount or quantity of marijuana manufactured as long as the government proves beyond a reasonable doubt that defendants manufactured a measurable or detectable amount of marijuana." Nordby was convicted by the jury on all three counts.

At sentencing, Nordby admitted that he had grown some marijuana on the property in 1992 and the spring of 1993, but hotly contested the amount of marijuana that the government sought to attribute to him during the period from August to September 1993 charged in the indictment. Nordby admitted that he had conspired with Jeb and Sam to grow marijuana in 1992, but insisted that their partnership had dissolved by 1993. Nordby further admitted that he had conspired with Cory Marchese to grow about 200 marijuana plants indoors in 1993, but asserted that this conspiracy ended by June 1993. Nordby pointed out that he and Marchese had been in Minnesota and Costa Rica from late July 1993 until five days before

their arrest on September 28, 1993. Finally, Nordby contended that unknown "guerilla growers" were responsible for planting and tending gardens 23-31; he claimed that this practice of maintaining a "guerilla" garden was common in Humboldt County.

The district court applied United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.3 to determine the amount of marijuana for which Nordby was responsible at sentencing. The court found by a preponderance of the evidence that Nordby was responsible for 1000 or more marijuana plants. Under 21 U.S.C. § 841(b)(1)(A)(vii), the district court's finding subjected Nordby to a statutory minimum sentence of ten years in prison and a statutory maximum of life. The district court sentenced Nordby to the ten-year minimum.

On Nordby's first appeal of his sentence, we held that the district court had made insufficient findings at sentencing. We vacated and remanded for resentencing. *United States v. Nordby*, 156 F.3d 1240, 1998 WL 476113, at *9-10 (9th Cir.1998). At resentencing on March 25, 1999, the district court again determined that Nordby was responsible for 1000 or more marijuana plants under 21 U.S.C. § 841(b)(1)(A)(vii) and sentenced Nordby to ten years. Nordby appeals from this resentencing.

### APPLICATION OF *APPRENDI*

*Apprendi v. New Jersey* is the latest in a series of cases in which the Supreme Court has expressed a heightened concern that the determination of "sentencing factors" by a judge using a preponderance-of-the-evidence standard implicates the accused's right to due process under the Fifth Amendment and right to a jury trial under the Sixth. Thus, in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Court noted these constitutional problems but avoided them by construing the enhancement provisions of 18 U.S.C. § 2119, the federal carjacking statute, to establish separate offenses that must be charged by indictment, submitted to a jury and proven beyond a reasonable doubt. *Jones,* 526 U.S. at 251-52, 119 S.Ct. 1215. There, the Court observed:

The dissent repeatedly chides us for failing to state precisely the principle animating our view that the carjacking statute, as construed by the Government, may violate the Constitution. The preceding paragraph in the text expresses that principle plainly enough, and we restate it here: under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. Because our prior cases suggest rather than establish this principle, our concern about the Government's reading of the statute rises only to the level of doubt, not certainty.

*Id.* at 243 n. 6, 119 S.Ct. 1215 (internal citation omitted).

*Jones* turned ultimately on a question of statutory interpretation. But in *Apprendi*, the constitutional question was "starkly presented." *Apprendi*, 120 S.Ct. at 2355. The Court held that:

In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in *Jones.* Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof, beyond a reasonable doubt." 526 U.S. at 252-53, 119 S.Ct. 1215 (opinion of

STEVENS, J.); *see also id.* at 523, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (opinion of SCALIA, J.).

*Id.* at 2362–63.[1] The Court then applied this principle to vacate the sentence of Charles Apprendi. Apprendi had been convicted in state court of possession of a firearm for an unlawful purpose, a "'second degree' offense" punishable by imprisonment for between five to ten years. *Id.* at 2351–52. At sentencing, however, a judge found by a preponderance of the evidence that Apprendi had committed his crime with a purpose to intimidate individuals because of race, which finding increased Apprendi's sentence under New Jersey's hate crime law to imprisonment between ten and twenty years. *Id.* at 2351, 2352. This increase in the prescribed statutory maximum penalty to which Apprendi was exposed violated Apprendi's constitutional rights under the Fifth and Sixth Amendments because the factual determination that had served to elevate his maximum statutory exposure had not been submitted to a jury and proved beyond a reasonable doubt. *Id.* at 2362–63.

█ We conclude that we are unable to give a construction to the statute before us that would avoid the constitutional issue raised by *Apprendi. See, e.g., Castillo v. United States,* — U.S. ——, ——, 120 S.Ct. 2090, 2091, 147 L.Ed.2d 94 (2000) (determination that "firearm" was a "machinegun" was not a sentencing factor but an element of 18 U.S.C. § 924(c)(1) (1988 & Supp. V)). Existing precedent in this circuit states plainly that Congress did not intend drug quantity to be an element of the crime under 21 U.S.C. §§ 841 and 846,

and that a defendant may be sentenced under these provisions pursuant to a finding made by a judge at sentencing under a preponderance of the evidence standard. *See United States v. Sotelo–Rivera,* 931 F.2d 1317, 1319 (9th Cir.1991). Section 841 plainly distinguishes between elements and sentencing factors. Section 841(a) is entitled "Unlawful acts" whereas § 841(b) is entitled "Penalties"[2] and states that "any person who violates subsection (a) of this section shall be sentenced . . ." as subsection (b) prescribes. Moreover, § 841(a) contains the phrase "it shall be unlawful" and appears to stand on its "own grammatical feet." *Jones,* 526 U.S. at 233–34, 119 S.Ct. 1215. Congress therefore clearly intended that drug quantity be a sentencing factor, not an element of the crime under § 841; the statute is not susceptible to a contrary interpretation. *See id.* at 239, 119 S.Ct. 1215. Nordby's case accordingly presents squarely the constitutional issue decided by *Apprendi.*

█ Our application of *Apprendi* is straightforward. First, Nordby's jury made no finding regarding the specific amount of marijuana that Nordby manufactured, possessed with intent to distribute, or conspired to possess with intent to distribute. The jury found merely that Nordby conspired and possessed marijuana for those purposes. It was told, moreover, that possession of any "measurable or detectable amount of marijuana" was sufficient to support a conviction.

Second, the judge's finding that Nordby possessed 1000 or more marijuana plants "increase[d] the penalty for [Nordby's] crime beyond the prescribed statutory

---

**1.** The Court's opinion in *Apprendi* expressed doubt concerning the correctness of *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which permitted a defendant to be subjected at sentencing to higher maximum penalties because of prior convictions, even though those convictions had not been set forth in the indictment to which the defendant pleaded guilty. *Apprendi* stated that it was "arguable that *Almendarez–Torres* was incorrectly decided and that a logical application of our reason-

ing today should apply if the recidivist issue were contested." *Apprendi,* 120 S.Ct. at 2362 (footnote omitted). The Court found it unnecessary to revisit *Almendarez–Torres* in order to decide *Apprendi,* however, and thus treated prior convictions as a "narrow exception" to the rule announced in *Apprendi. Id.*

**2.** It is true, as Nordby notes, that the "Penalty" heading is not dispositive. *See Castillo,* 120 S.Ct. at 2093.

maximum." Section 841(a) contains no penalty provision. But the only sentence under § 841 justifiable under the facts as found by the jury would be a sentence (and possible fine) of not more than five years applicable to possession of less than 50 marijuana plants. *See* 21 U.S.C. § 841(b)(1)(D). The trial court's finding that Nordby possessed 1000 or more plants under § 841(b)(1)(A)(vii) increased Nordby's sentence to "not [ ] less than 10 years or more than life" and a possible fine. Thus, the judge's finding, made under a preponderance standard, increased the statutory maximum penalty for Nordby's crime from five years to life.[3]

■ We reject the argument that § 841 contains "no prescribed statutory maximum," and that therefore *Apprendi* does not apply to Nordby's case. *Apprendi* makes clear that the "prescribed statutory maximum" refers simply to the punishment to which the defendant is exposed solely under the facts found by the jury. *See Apprendi*, 120 S.Ct. at 2363 (" '[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.' ") (quoting *Jones*, 526 U.S. at 252, 119 S.Ct. 1215 (Stevens, J. concurring)). Thus, under *Apprendi* the "prescribed statutory maximum" for a single conviction under § 841 for an undetermined amount of marijuana is five years.[4]

■ Nordby's case comes to us on direct review, so there can be no question that he is entitled to the benefit of *Apprendi*'s new rule. *See Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). We conclude that the

district court erred by sentencing Nordby under 21 U.S.C. §§ 841 and 846 for manufacturing, possessing with intent to distribute and conspiring to possess with intent to distribute 1000 or more marijuana plants without submitting the question of marijuana quantity to the jury and without a finding that the marijuana quantity had been proved beyond a reasonable doubt. We further conclude that the constitutional rule in *Apprendi* undermines our existing precedent holding that a defendant's sentence under § 841 can be based on a judge's finding at sentencing of drug quantity under a preponderance-of-the-evidence standard. In this respect *Apprendi* is "closely on point." *United States v. Mandel*, 914 F.2d 1215, 1221 (9th Cir.1990). Our existing precedent is overruled to the extent it is inconsistent with *Apprendi*. *See United States v. Brinton*, 139 F.3d 718, 722 (9th Cir.1998); *United States v. Ramos–Oseguera*, 120 F.3d 1028, 1035 (9th Cir.1997); *United States v. Alerta*, 96 F.3d 1230, 1237 (9th Cir.1996); *United States v. Baker*, 10 F.3d 1374, 1417 (9th Cir.1993); *United States v. Castaneda*, 9 F.3d 761, 769 (9th Cir.1993); *United States v. Sotelo–Rivera*, 931 F.2d 1317, 1319 (9th Cir. 1991); *United States v. Rosales*, 917 F.2d 1220, 1223 (9th Cir.1990); *United States v. Walker*, 915 F.2d 480, 486 (9th Cir.1990); *United States v. Klein*, 860 F.2d 1489, 1494–95 (9th Cir.1988); *United States v. Kinsey*, 843 F.2d 383, 391–92 (9th Cir. 1988); *United States v. Normandeau*, 800 F.2d 953, 956 (9th Cir.1986).

## PLAIN ERROR REVIEW

■ Both *Jones* and *Apprendi* were decided after Nordby's resentencing. It is

---

3. Because the court's finding increased the maximum sentence, we need not decide whether the increase in the statutory minimum sentence also fell within *Apprendi*'s formulation, adopted from Justice Stevens' concurring opinion in *Jones*, that " 'it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed *range of penalties* to which a criminal defendant is exposed.' "

*Apprendi*, 120 S.Ct. at 2363 (quoting *Jones*, 526 U.S. at 252, 119 S.Ct. 1215 (Stevens, J., concurring)) (emphasis added).

4. We are not alone among the circuits in concluding that the rule of *Apprendi* applies to sentences under 21 U.S.C. § 841. *See United States v. Aguayo–Delgado*, 220 F.3d 926, 931–32 (8th Cir.2000); *United States v. Rebmann*, 226 F.3d 521 (6th Cir.2000).

no surprise, therefore, that Nordby never objected to the sentencing judge's determination under the preponderance standard of the amount of marijuana for which Nordby was responsible. However understandable this failure to object, we may grant Nordby relief only if the error we find today was "plain." *See* Fed.R.Crim.P. 52(b). To secure reversal under this standard Nordby must prove that: (1) there was "error"; (2) the error was "plain"; and (3) that the error affected "substantial rights." *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). If these conditions are met, we may exercise our discretion to notice the forfeited error only if the error (4) "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

■ We have already concluded that the district court erred. That the error did not become apparent until appeal does not bar relief in Nordby's case. It is enough that the *Apprendi* error is "plain" at the time of this appeal. *See Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *United States v. Turman*, 122 F.3d 1167, 1170 (9th Cir.1997).

We next turn to the question whether the district court's failure to submit the question of drug quantity to the jury affected Nordby's "substantial rights." *Olano*, 507 U.S. at 732, 113 S.Ct. 1770. There are two possible approaches to this issue. One is simply to weigh the extra sentence imposed upon Nordby beyond that permitted by the jury's verdict. The jury convicted Nordby of violating § 841(a)(1) with no specification of the amount of drugs involved. Five additional years of imprisonment were imposed beyond that authorized by this verdict, which easily affected Nordby's substantial rights. *See United States v. Anderson*, 201 F.3d 1145, 1152 (9th Cir.2000) ("a longer sentence undoubt-

edly affects substantial rights"). A second, more stringent approach would be to treat drug quantity as the equivalent of an element of the offense on which the jury was not instructed.[5] In that case, a harmless error analysis would inquire whether it was "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder v. United States*, 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). If, for example, "the defendant contested the omitted element and raised evidence sufficient to support a contrary finding," the error could not be harmless. *Id.* at 19, 119 S.Ct. 1827. If the error was harmless under this standard, it would not have affected Nordby's substantial rights. *See Olano*, 507 U.S. at 734, 113 S.Ct. 1770 (harmless error and substantial rights inquiries are same except defendant bears burden of proof in latter).

We need not decide which of these two approaches to the "substantial rights" inquiry is the proper one, because Nordby has borne his burden under the more stringent standard of *Neder*. Even under that analysis, the record leaves little room for doubt that Nordby was prejudiced by the failure to submit drug quantity to the jury. Although it was uncontested at trial that over 2000 marijuana plants were found growing on land owned by Nordby, Nordby consistently maintained that he was not responsible for growing these plants, or for conspiring to do so at the time charged in the indictment. Nordby himself did not live on the land. In fact, he had been vacationing for much of the time that the marijuana crop had been in the ground, and only returned to the area five days before being arrested. Although Nordby's counsel admitted at trial that Nordby had grown relatively small amounts of marijuana in the past, Nordby never conceded that he had been part of

---

5. Despite the functional equivalence between an element of the crime and a sentencing factor that increases the prescribed statutory maximum beyond that permissible on the facts as found by a jury, we do not necessarily equate the two for all purposes. *See Apprendi*, 120 S.Ct. at 2365 & n. 19.

the conspiracy to grow and distribute marijuana in August and September of 1993.

At sentencing, when the amount of marijuana for which Nordby was responsible became relevant, Nordby presented additional evidence that he was not responsible for all the marijuana found on his land.[6] He presented evidence that he had conspired in 1992 with Jeb and Sam Stafslien to grow marijuana outside on Nordby's land, but that this conspiracy ended by the beginning of 1993. He presented evidence that the amount of marijuana grown in the 1992 conspiracy was considerably less than that grown in 1993, and that it was not reasonably foreseeable that Sam and Jeb would grow such a large amount of marijuana on his land in 1993. Nordby further presented evidence that he had conspired with Cory Marchese to grow approximately 200 marijuana plants indoors, but that this conspiracy ended by June 1993. Finally, Nordby presented evidence regarding the size, location and growing methods used in the 31 gardens that could have permitted an inference that some of the gardens were tended by so called guerilla gardeners who were not arrested at all.

In sum, Nordby "contested the omitted element and raised evidence sufficient to support a contrary finding." *Neder*, 527 U.S. at 19, 119 S.Ct. 1827. Even acknowledging, as we must, that Nordby bears the burden of proving that the court's error

prejudiced him, we conclude that Nordby has demonstrated more than a reasonable doubt that he was responsible for possessing or manufacturing 1000 or more marijuana plants in August and September 1993.

This error prejudiced Nordby in a concrete way. Because of the court's finding, Nordby received a sentence five years longer than the maximum he could have received had he been sentenced on the facts as found by the jury. The *Apprendi* error therefore affected the outcome of Nordby's trial, and affected his "substantial rights" under the plain error standard. *Olano*, 507 U.S. at 734, 113 S.Ct. 1770.

Under the fourth prong of the plain error standard, we conclude that the *Apprendi* error in Nordby's case "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732, 113 S.Ct. 1770. The rights to jury trial and a determination of guilt beyond a reasonable doubt are the bedrock of our constitutional system of justice. *See Apprendi*, 120 S.Ct. at 2355–56. Moreover, fairness is undermined when a court's error "impose[s] a longer sentence than might have been imposed had the court not plainly erred." *United States v. Castillo–Casiano*, 198 F.3d 787, 792 (9th Cir.1999), *amended by*, 204 F.3d 1257 (9th Cir.2000). We therefore exer-

---

6. Our review encompasses the "whole record." *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Here, we look at Nordby's sentencing proceedings (as well as his briefing on appeal) to assist us in determining what evidence Nordby would have introduced at trial on the question of drug quantity had that issue been relevant. The Supreme Court took an analogous approach in *Neder;* it looked to the trial record and Neder's representations on appeal to determine whether the failure to submit an element of the crime, materiality under federal fraud statutes, was harmless error. *See Neder*, 527 U.S. at 15–16, 119 S.Ct. 1827.

We do not, however, consider any admissions made by Nordby at sentencing in assessing the prejudice suffered by Nordby because of the *Apprendi* error. By its own terms the

harmless error/substantial rights inquiry is directed at whether the error affected the jury's verdict, i.e., whether the reviewing court concludes "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). So too with the Supreme Court's application of the harmless error standard to the failure to submit an element to the jury: "We think, therefore, that the harmless-error inquiry must be essentially the same: Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" *Neder*, 527 U.S. at 18, 119 S.Ct. 1827. Any new admissions by Nordby at sentencing, made after the jury had already rendered its verdict, are irrelevant to this inquiry.

cise our discretion to take account of the plain error and vacate Nordby's sentence.

■ The question then arises as to the appropriate procedure on remand. In comparable cases in which the jury's finding did not support the sentence, and where the conviction as well as the sentence was on appeal, we have allowed the government a brief period of time to elect whether it accepts a resentencing of the defendant to the lesser term permitted by the jury's findings. If the government so elects, the conviction is affirmed and resentencing takes place subject to the lower maximum sentence. If the government does not so elect, a new trial is ordered. *See United States v. Garcia*, 37 F.3d 1359, 1371 (9th Cir.1994); *United States v. Alerta*, 96 F.3d 1230, 1236 (9th Cir.1996). In the present case, however, Nordby has appealed only his sentence; his conviction is not before us. We therefore do not consider ourselves to have the option of ordering a retrial of a conviction that Nordby has accepted as final.[7] We accordingly remand to the district court for resentencing subject to the maximum sentence supported by the facts found by the jury beyond a reasonable doubt, consistently with *Apprendi* and this opinion.[8]

**SENTENCE VACATED; REMANDED FOR RESENTENCING.**

REINHARDT, Circuit Judge, concurring specially:

I concur fully in Judge Canby's opinion for the court. While in this case the more stringent *Neder* test for harmless error is satisfied and therefore we do not resolve the question whether a less stringent test is applicable, I write separately to explain the nature and basis of the less stringent standard described in the opinion.

The less stringent standard does *not* involve a review of the evidence *not* considered by the jury in order to try to determine what the jury could have concluded. Rather, it requires invalidation of the sentence simply because the verdict reached by the jury does not support the imposition of a sentence greater than five years. There are two alternative rationales that underlie the less stringent standard and its rejection of the *Neder* approach. The first rationale is that while in *Neder* the defendant was sentenced for the crime of which the jury convicted him, here the defendant was not convicted of the crime for which he was sentenced. *See Neder v. United States*, 527 U.S. 1, 6, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). That rationale is based on the premise that for a defendant who grows marijuana to be sentenced to more than five years, he must have been convicted of committing the crime specified by §§ 841(a) *and* 841(b)(1)(A) collectively—cultivating 1000 or more marijuana plants—and not simply of violating § 841(a) or §§ 841(a) *and* 841(b)(1)(D)—cultivating a detectable amount of marijuana. *See United States v. Anderson*, 201 F.3d 1145 (9th Cir.2000).

The second rationale for applying the less stringent standard is that weighing the evidence that the jury did not consider is improper where the missing element is central to the offense. The *Neder* opinion makes clear that its scope is limited, but does not tell us the nature of the rule's boundaries. *See Neder*, 527 U.S. at 17 n. 2, 119 S.Ct. 1827; *Id.* at 33, 119 S.Ct. 1827 (Scalia, J. dissenting). The premise of the second rationale is that where the element the jury failed to consider is central to the existence of an offense, the omission of the element falls outside of *Neder*'s scope. The second rationale would be applicable here because, in cases in which, for sentencing purposes, the particular offense depends entirely on the quantity of drugs, quantity is a central element.

---

7. We express no opinion as to whether offering an option to the government would be a permissible or appropriate remedy in this case if it were available.

8. Because of our disposition of Nordby's constitutional claim, we decline to address Nordby's claim that the district court made insufficient factual findings at sentencing under U.S.S.G. § 1B1.3.

Whichever rationale one employs, the less stringent standard would require a court to conclude that the type of error that occurred here, the failure of the jury to determine the quantity of marijuana attributable to the defendant, cannot be harmless regardless of what the record discloses regarding the amount of marijuana for which the defendant could have been found culpable. Because Nordby's sentence must be reversed whether we apply the more stringent *Neder*-style harmless error review or the less stringent standard described above, the opinion for the court does not decide which approach we should use in future cases. Nevertheless, in my view, it is important that the nature and basis of the less stringent approach be explained in greater detail than is required for purposes of the court's opinion.