

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-10012 |
| Plaintiff - Appellee, | D.C. No. 4:10-cr-00915-RCC-CRP-4 |
| v. | |
| PAUL L. WILLIAMS, | MEMORANDUM* |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-10017 |
| Plaintiff - Appellee, | D.C. No. 4:10-cr-00915-RCC-CRP-1 |
| v. | |
| MIKADO NABOB THOMPSON, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, Chief District Judge, Presiding

Argued and Submitted December 8, 2014
San Francisco, California

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: TASHIMA and PAEZ, Circuit Judges, and QUIST, Senior District Judge.[**]

Appellant Mikado Thompson was the leader of a multi-state marijuana trafficking organization, and Appellant Paul Williams was a long time participant in the organization. A jury convicted Thompson of running a continuing criminal enterprise ("CCE"), and convicted Williams of conspiring to distribute marijuana. Williams was sentenced to 121 months. Thompson challenges the validity of his CCE conviction. Williams challenges his conviction and sentence.

Because the parties are familiar with the facts, we recite them only as necessary to illuminate our disposition. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

A. **Thompson**

**1.** To convict on a CCE charge, the government must prove, among other elements, that the defendant (1) engaged in a continuing series of narcotics offenses and (2) organized, supervised, or managed five or more persons in the course of the enterprise. See United States v. Fuchs, 218 F.3d 957, 962-63 (9th Cir. 2000); United States v. Sterling, 742 F.2d 521, 525 (9th Cir. 1984).

---

[**] The Honorable Gordon J. Quist, Senior District Judge for the U.S. District Court for the Western District of Michigan, sitting by designation.

Thompson argues that the indictment charging him with the CCE violation was constructively amended by the introduction of evidence at trial of uncharged predicate offenses and supervisees who were not disclosed to the grand jury. Thompson's argument is foreclosed under our precedents because there is no requirement that the government list in the indictment the continuing series of predicates or name the supervisees. See id. at 526 ("[T]here is no legal requirement that the violations which make up the continuing series be specifically listed in the indictment."); United States v. Zanzucchi, 892 F.2d 56, 58 (9th Cir. 1989) ("[T]here is no requirement that an indictment or a bill of particulars identify the supervisees in a CCE case.").

2. Thompson argues that the verdict must be set aside because the jury may have based its verdict on predicate offenses that all occurred outside the five-year limitations period. So long as the jury relied on one predicate offense that occurred within the limitations period, Thompson's CCE conviction is valid. United States v. Baker, 10 F.3d 1374, 1410 (9th Cir. 1993), overruled in part on other grounds by United States v. Nordby, 225 F.3d 1053, 1059 (9th Cir. 2000).

The district court instructed the jury that, in order to convict Thompson of the CCE charge, it had to find (1) Thompson guilty of the conspiracy charge to distribute marijuana, charged in count two of the second superseding indictment,

3

and (2) that the conspiracy constituted one offense in the continuing series of narcotics violations Thompson committed. The jury convicted Thompson of both the CCE charge and the conspiracy charge. It is established law "that title 21 conspiracies may serve as predicate offenses under the CCE statute." United States v. Hernandez-Escarsega, 886 F.2d 1560, 1571 (9th Cir. 1989). This is so even when, as here, the conspiracy charge is subsequently dismissed to protect a defendant against double jeopardy. Id. at 1572, 1582 (affirming a CCE conviction based upon the predicate conspiracy convictions the panel vacated). Having reviewed the record, there is substantial evidence that the conspiracy lasted well into the limitations period, whether measured by the date of the first indictment or the second superseding indictment. Therefore, the statute of limitations does not undermine Thompson's CCE conviction.

3. Thompson argues that his conviction must be vacated because of the risk that the jury concluded that Thompson supervised five persons (out of 19 possible persons) whom Thompson claims were per se ineligible to be counted as supervisees. We reject this argument because, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Santos-Granados, Pacheco, Sims, and LaRocca were managed by Thompson, as that term is defined under our precedents. See United States v. Montgomery, 384

4

F.3d 1050, 1062 (9th Cir. 2004) (standard of review); United States v. Delgado, 4 F.3d 780, 785 (9th Cir. 1993) (describing the management requirement). Contrary to Thompson's argument, the government did not suggest that Cogan was Thompson's supervisee, and there is no reason to believe the jury counted him as such.

4. Thompson argues that it was plain error for the district court not to instruct the jury that a person's status as a conspirator in the marijuana trafficking organization does not necessarily mean that Thompson organized, supervised, or otherwise managed that person. Even assuming the clarification Thompson sought is a correct statement of the law, the need for a sua sponte instruction on the issue was not plain.

"An error is plain if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results." United States v. De La Fuente, 353 F.3d 766, 769 (9th Cir. 2003) (internal citations omitted). In Hernandez-Escarsega, we held that a district court does not generally have to define for a jury the terms "organizer," "supervisor," or "manager" of a criminal enterprise. 886 F.2d at 1571-72. While United States v. Jerome, 942 F.2d 1328, 1331 (9th Cir. 1991), requires a clarifying instruction on the management

requirement when there is the potential for juror confusion, the default rule remains that no instruction is necessary. Thus, it was not "clear or obvious under current law" that a clarifying instruction had to be given. There was no plain error.

**B.    Williams**

**1.**    Williams argues the district court improperly denied him a Franks[1] hearing to challenge the wiretap of his cellular phone. Reviewing de novo, United States v. Ippolito, 774 F.2d 1482, 1484 (9th Cir. 1985), we conclude that the wiretap affiant did not omit material information from the wiretap affidavit. First, the affiant disclosed the raid on the Camino de Oeste house in the wiretap affidavit, and he specifically disclosed the fact that Pacheco and the brown Impala had been seen on multiple occasions at the Star Pass house. Thus, it does not seem that the government omitted any information.

Second, even if the affiant could have disclosed more information regarding the marijuana suppliers, that omission was immaterial because the purpose of the wiretap was not limited to establishing the source of the marijuana. Viewing "[t]he necessity for the wiretap . . . in light of the government's need . . . to develop an effective case against those involved in the conspiracy," we conclude that the "affidavit contains 'reasonable detail' and is sufficiently case-specific to pass

_____

[1]See Franks v. Delaware, 438 U.S. 154 (1978).

6

muster under [our] precedent[s]." United States v. Garcia-Villalba, 585 F.3d 1223, 1228, 1229 (9th Cir. 2009). Therefore, Williams was not entitled to a Franks hearing.

2. The district court properly consolidated Williams' and Thompson's trial. The jury's individualized assignment of responsibility to Williams and Thompson regarding drug quantities "is highly indicative of its ability to compartmentalize the evidence" against them. See United States v. Stinson, 647 F.3d 1196, 1205 (9th Cir. 2011) (internal quotation marks omitted). Moreover, the district court's limiting instruction to consider the defendants separately "more than sufficient[ly] guard[ed] against the possibility of prejudice to [Williams]." United States v. Decoud, 456 F.3d 996, 1009 (9th Cir. 2006) (internal quotation marks omitted).

3. The district court did not abuse its discretion by allowing the government's substitute Jamaican patois expert to testify at trial. Although Williams did not receive the notice he was due under Federal Rule of Criminal Procedure 16, he had in his possession before trial transcripts of the phone calls that were materially identical to those authenticated by the substitute expert at trial. Williams thus had the tools to challenge the accuracy of the substitute expert's translations; he simply did not do so convincingly. See United States v. Mendoza,

244 F.3d 1037, 1046-47 (9th Cir. 2001) (upholding a district court's ruling to allow a substitute expert to testify despite a Rule 16 violation where the defendant knew the bases for both experts' testimony prior to trial).

4.      Nor did the district court abuse its discretion by qualifying the substitute expert as an expert based on his experience speaking Jamaican patois. See United States v. Abonce-Barrera, 257 F.3d 959, 964 (9th Cir. 2001). Federal Rule of Evidence 702 explicitly allows an expert to be qualified on the basis of his experience.

5.      Williams argues it was error not to instruct the jury on multiple conspiracies. This argument is meritless. The district court gave the requested instruction.

6.      It is undisputed that the district court violated Williams' Fifth and Sixth Amendment rights under Apprendi v. New Jersey, 530 U.S. 466 (2000), when the court, and not a jury, determined the quantity of marijuana for which Williams was responsible. Because the government raised the Apprendi violation for the first time on appeal, we review for plain error, see United States v. Gonzalez-Aparicio, 663 F.3d 419, 426-27 (9th Cir. 2011), and we find none.

Williams was sentenced to 121 months pursuant to 21 U.S.C. § 841(b)(1)(B)(vii). That clause provides for a sentence of five to forty years where

the defendant conspires to possess with the intent to distribute "100 kilograms or more of a mixture or substance containing a detectable amount of mari[j]uana." § 841(b)(1)(B)(vii); see also 21 U.S.C. § 846. The record establishes beyond all doubt that Williams was responsible for at least 100 kilograms of marijuana.

In his formal objections to the presentence investigation report, Williams argued that "the evidence presented at trial and apparently believed by the jury" showed that he was responsible for 100 to 400 kilograms of marijuana. This concession is not unlike the concession made by defense counsel in United States v. Buckland, which removed "all doubt that the Apprendi error . . . did not affect the outcome of the proceedings." 289 F.3d 558, 569-70 (9th Cir. 2002) (en banc).

Moreover, the testimony of Williams' conspirators directly linked Williams to more than 100 kilograms of marijuana. Pacheco testified he delivered approximately 56.7 kilograms of marijuana to Williams on one occasion and later delivered another 68.39 kilograms. Pacheco also sold approximately 113.8 kilograms of marijuana to Thompson, which he delivered to the Star Pass stash house that Williams ran. In addition to these purchases, Williams and Pacheco aided in the recovery and delivery of approximately 68 kilograms of marijuana that had been locked in a Honda.

9

Bruce Oliver was a truck driver who ran bulk loads of marijuana from Tucson to central Florida. Oliver testified that he received three loads from Williams. The combined weight of those three loads was at least 163 kilograms.

Whether we look to Williams' counsel's concession or to the evidence of Williams' direct involvement with marijuana transactions, we are convinced that Williams was responsible for at least 100 kilograms of marijuana. That amount of marijuana qualified Williams for a sentence in the range established by § 841(b)(1)(B)(vii).[2] Therefore, because the Apprendi violation did not affect Williams' substantial rights, there was no plain error and Williams' sentence is affirmed. See Buckland, 289 F.3d at 569-70.

AFFIRMED.

---

[2] We have evaluated the Apprendi violation in light of the sentencing clause actually applied by the district court. However, as the government argues, Williams' sentence of 121 months fell within the range established by 21 U.S.C. § 841(b)(1)(C)--i.e., "a term of imprisonment of not more than 20 years"--as well. A defendant is eligible for a sentence under that clause upon proof of 50 kilograms of marijuana.