# United States Court of Appeals
## For the First Circuit

---

No. 99-1318

UNITED STATES,
Appellee,

v.

DANIEL LAFRENIERE, a/k/a Diablo Dan,

Defendant, Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

_____

Before

Boudin and Lipez, Circuit Judges,

Casellas* District Judge.

_____

Michael J. Cruz, by appointment of the Court, with whom Bernard & Cruz, was on brief for appellant Daniel LaFreniere. Kirby A. Heller, Attorney, Department of Justice, with whom Donald K. Stern, United States Attorney, and Andrew Levchuk, Assistant U.S. Attorney, were on brief, for appellee.

_____

January 2, 2001

_____

_____
*     Of the District of Puerto Rico, sitting by designation.

**CASELLAS, District Judge.**  A jury convicted appellant Daniel

Lafreniere[1] (hereinafter "Lafreniere") of conspiracy to possess with

intent to distribute and to distribute heroin.  The district court

sentenced him to 120 months in prison, followed by 5 years of

supervised release.  This appeal ensued.  We affirm.

## I.  BACKGROUND

On October 24, 1997, a federal grand jury returned a second

superseding indictment against Lafreniere and twelve other individuals

charging them with the commission of several offenses stemming from

their involvement in the Connecticut and Massachusetts chapters of the

Diablos Motorcycle Club (hereinafter the "Diablos," or the "Club").

Lafreniere was charged, either alone or in combination with others,

with conspiracy to commit racketeering, 18 U.S.C. § 1962(b) (count 1),

and actually committing racketeering, id. (c) (count 2); interstate

transportation of stolen motor vehicles, id. § 2312 (counts 24, 26 and

28); possession and sale of stolen motor vehicles, id. § 2313 (counts

25, 27 and 29); conspiracy to possess with intent to distribute and to

distribute heroin, 21 U.S.C. § 846 (counts 31 and 32); carrying a

firearm during and in relation to a drug-trafficking offense, 18 U.S.C.

§ 924(c) (counts 35 and 36); and possession and transfer of an

---

[1]Lafreniere was tried and convicted with a number of other defendants.  Their appeals were heard at the same time, and are addressed in separate decisions. United States v. Houle, No. 99-1310 (1st Cir. filed February 10, 1999); United States v. Baltas, No. 99-1574 (1st Cir. filed April 2, 1999).

unregistered sawed-off shotgun, id. § 5861(d) (count 39).

The jury acquitted Lafreniere on all counts with the exception of count 32. He presents two related issues on appeal. First, he assigns fault to the district court in denying his motion for judgment of acquittal, insisting that the court should have found that he was entrapped as a matter of law. Second, he asserts, for the first time on appeal, that the district court erred in instructing the jury about the predisposition element of the defense of entrapment. We sketch the facts contained in the record in the light most hospitable to the jury's verdict, see United States v. González-Vázquez, 219 F.3d 37, 40 (1st Cir. 2000), adding detail as it becomes necessary to the discussion of the issues at hand.

The Diablos started out in San Bernardino, California in the 1960's, and from there expanded to the rest of the country. At the times relevant to this appeal, the Diablos's national presence included chapters in California, Connecticut, Florida, Indiana, Massachusetts, and New Hampshire. They had a written constitution, which conditioned membership, among other things, upon being at least 21 years old, Caucasian, and owning a firearm and a Harley-Davidson motorcycle of a particular size. Membership was by invitation only, and women and African-Americans were specifically banned. Members first had to serve as "prospects," a role similar to that of a pledge in a fraternity, before being eligible for full membership. The Diablos had both

-4-

national and local governing structures.

One of the prosecution's star witnesses was William Alvis (hereinafter "Alvis"). Prior to becoming a Diablo, Alvis had been affiliated with the Barbarians Motorcycle Club, where he became knowledgeable of the biker culture and language. While associated with the Barbarians, Alvis was charged with committing various crimes unrelated to the instant indictment, and eventually began cooperating with the government. He infiltrated the Diablos at the FBI's behest.

At trial, Alvis testified that one important characteristic of the Diablos was their shared sense of brotherhood. Alvis gained the trust and confidence of the Diablos, and with his familiarity with the biker culture, eased his way into the internal affairs of the organization. He developed close relationships with several members of the Club, particularly with various members of the Connecticut and Massachusetts chapters, ultimately becoming vice president of the latter. Simply put, Alvis was the FBI's "eyes and ears inside of the Diablos organization."

As a result of his status within the Diablos, Alvis was able to gather for the FBI valuable information about the Club's structure and daily operations. He also introduced several undercover agents into the Club, and, with their help, put together a number of criminal schemes involving the Diablos. Among these schemes were two reverse-sting heroin deals. The government's evidence of the circumstances

surrounding these schemes consisted mainly of Alvis's testimony at trial. Following is a summary of this evidence.

At a meeting held in late July of 1995, Alvis, then treasurer of the Massachusetts chapter, informed its members that the chapter was in a bad financial situation and was unable to meet its expenses. Specifically, Alvis told the members that they would probably be evicted from the clubhouse because the rent was in arrears. To alleviate the situation, Alvis proposed that some members aid him in a drug transaction. He told the Diablos that he needed them to "[r]un security for [a] transportation of heroin." He also explained that each participant would be paid $500, which money would be "invested . . . back into the Club."

Lafreniere, who was among those present at the meeting, agreed to take part in the plan. In expressing his acquiescence, Lafreniere, who had already participated in a similar deal about a month earlier, stated, matter-of-factly: "I already did one of these things."

## II. DISCUSSION

### A. Entrapment as a Matter of Law

Entrapment consists of two prongs: "(1) improper Government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal conduct." United States v. Gamache, 156 F.3d 1, 9 (1st Cir. 1998). Once the defendant meets his

initial burden of showing entitlement to an instruction on the defense, "the burden shifts to the government to prove beyond a reasonable doubt *either* that there was no undue government pressure or trickery or that the defendant was predisposed." United States v. Acosta, 67 F.3d 334, 338 (1st Cir. 1995). "As a matter of law, entrapment cannot flourish unless both elements of the defense . . . coincide. The defense fails if the jury is persuaded beyond a reasonable doubt that *either* is lacking." United States v. Gifford, 17 F.3d 462, 468 (1st Cir. 1994) (citation, internal quotation marks, alterations and footnote omitted).

We review de novo Lafreniere's claim that the district court should have granted his motion for judgment of acquittal because he was entrapped as a matter of law, applying the traditional sufficiency-of-the-evidence standard.[2] See Acosta, 67 F.3d at 338; Gifford, 17 F.3d at 467. Thus, we review all the evidence, direct and circumstantial, in the light most charitable to the prosecution, drawing all reasonable inferences consistent with the verdict, and eschewing credibility judgments, to determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt. See, e.g., United States v. Marrero-Ortiz, 160 F.3d 768, 772 (1st Cir. 1998); United States v. Laboy-Delgado, 84 F.3d 22, 26 (1st Cir. 1996). The crux of the issue is whether "the jury reasonably could have thought that this was not a

_____

[2]Since the government does not question Lafreniere's entitlement to an entrapment charge, we go directly to the sufficiency-of-the-evidence challenge.

-7-

case in which government agents implanted in the mind of an innocent person the *disposition* to commit the alleged offense and induced its commission in order that they may prosecute." Gifford, 17 F.3d at 470 (citation, internal quotation marks and alterations omitted).

Lafreniere first alleges improper inducement. He argues that Alvis spurred him to participate in the drug deal by exploiting their bond as Diablos and by stressing the financial hardships of the Massachusetts chapter. It is settled that not all inducement is unlawful; only that which is "improper" is considered "inducement" for purposes of entrapment. See United States v. Gendron, 18 F.3d 955, 961 (1st Cir. 1994). Inducement "consists of an 'opportunity' *plus* something else—typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative non-criminal type of motive." Id. In the case at bar, the evidence presented to the jury reasonably established that no such pressure was brought upon Lafreniere. Alvis merely explained the Club's financial situation to its members and presented a plan, albeit an illegal one, to alleviate it. While in doing so Alvis provided Club members with an opportunity to commit a crime, there was nothing else to it.

Lafreniere urges us to consider Sorrells v. United States, 287 U.S. 435 (1932) as an example of the "subtle nature of improper inducement," which he claims he was subjected to. According to him, "[d]espite the layman's belief that entrapment requires aggressive and

-8-

coercive behavior on the part of a government agent, the facts in Sorrells provide effective illustration of an inducement which went beyond merely providing the defendant with an opportunity to commit a crime." Id.

Sorrells involved a conviction under the National Prohibition Act. The defendant, a World War I veteran, was visited by a prohibition agent posing as a tourist, who, as it turned out, was also a war veteran. Playing upon their common experiences, the agent twice asked the defendant for some liquor without result. Upon the agent's third request, the defendant gave in. At trial, the defendant alleged entrapment, but the court refused to sustain the defense ruling that, as a matter of law, there had been no entrapment. The circuit court affirmed; the Supreme Court reversed and remanded.

Contrary to Lafreniere's contention, the Court in Sorrells did not rule that the defendant had been entrapped as a matter of law, but "that upon [the] evidence produced . . . the defense of entrapment was available and that the trial court was in error in holding that as a matter of law there was no entrapment and in refusing to submit the issue to the jury." Id. at 452 (emphasis added). The Court found that the agent had "lured" the defendant "by repeated and persistent solicitation in which he succeeded by taking advantage of their experiences as companions in arms in the World War." Id. at 441. No such insistence occurred in this case.

-9-

Lafreniere asserts, nonetheless, that Alvis "purposefully took advantage of the emotional bond" between them to induce him. At trial, Alvis acknowledged having used Lafreniere's "trust," "loyalty" and "affection" to get him involved in the drug deal. Yet such cunning, without more, is not impermissible. See United States v. Young, 78 F.3d 758, 761 (1st Cir. 1996) (rejecting "the proposition that friendship, without a plea predicated upon friendship, suffices legally as inducement."); Sorrells, 287 U.S. at 441 ("Artifice and stratagem may be employed to catch those engaged in criminal enterprises."). While Alvis may have led Lafreniere to believe that the plan would benefit the Club, he did not twist his arm to make him take part in it. The evidence reasonably supports a finding that rather than an "unwary innocent," Lafreniere was an "unwary criminal." Sherman v. United States, 356 U.S. 369, 372 (1958).

Our conclusion that Lafreniere was not wrongfully induced suffices to dispose of his claim that he was entrapped as a matter of law. We note, nonetheless, that the evidence also supports a finding that he did not lack the requisite predisposition. In this connection we ask "how the defendant likely would have reacted to an *ordinary* opportunity to commit the crime," Gendron, 18 F.3d at 962, taking into consideration factors such as (1) Lafreniere's character or reputation; (2) whether the initial suggestion to commit the crime was made by the government; (3) whether Lafreniere was engaged in criminal activity for

-10-

profit; (4) whether he showed reluctance to commit the offense, which was overcome by governmental persuasion; and (5) the nature of such persuasion or inducement, see Gamache, 156 F.3d at 9-10.

It is not disputed that Alvis initially suggested the drug deal as a way to generate money for the Club. Also, Lafreniere did not have a criminal record, particularly as to drug trafficking. The relevance of these circumstances, however, is markedly outweighed by more substantial factors. First and foremost, Lafreniere showed no reluctance to engage in the heroin transaction; he readily agreed to the plan. This factor, in itself, can "adequately evince an individual's predisposition." Gifford, 17 F.3d at 469. Moreover, in expressing his acquiescence, Lafreniere remarked that he had "already d[one] one of these things," in reference to the previous reverse sting heroin transaction in which he had been involved.[3] Second, as already noted, the government's inducement was not improper; Alvis did not coerce, threaten or doggedly pressure Lafreniere to participate in the

---

[3]Lafreniere objects to the consideration of the evidence of this prior involvement arguing that under Jacobson v. United States, 503 U.S. 540, 549 (1992), a defendant's predisposition must be determined prior to any contact with government agents. However:

> [T]his is not a correct statement of the law. It is true that, when a defendant raises a defense of entrapment, the government must show that he was predisposed to commit the charged crime prior to his contact with government agents; however, the government may use the defendant's behavior after he was approached by government agents as evidence of his predisposition prior to meeting the agents.

United States v. Rogers, 121 F.3d 12, 17 (1st Cir. 1997) (citing United States v. Acosta, 67 F.3d 334, 339 (1st Cir. 1995)).

-11-

transaction. Third, Lafreniere was a regular drug user. He argues nonetheless that the evidence showed that he was "essentially a hard-working family man." However, as we have noted before, "it cannot be enough where the defendant readily agreed to engage in a criminal act, to show that he enjoys good reputation." United States v. Panet-Collazo, 960 F.2d 256, 259 (1st Cir. 1992) (citation, internal quotation marks and alterations omitted). In sum, we find that, based on the evidence, a reasonable jury could have found that Lafreniere was not entrapped.

## B. Instructional Error

Lafreniere next alleges that the trial court erred in instructing the jury as to the defense of entrapment. Because Lafreniere did not object to the charge at trial, we review this claim for plain error. United States v. Alzate, 70 F.3d 199, 201 (1st Cir. 1995). "This type of review entails inquiry into whether affirmance would skew the fundamental fairness or basic integrity of the proceeding below in some major respect, so as to result in a miscarriage of justice." United States v. Alicea, 205 F.3d 480, 484 (1st Cir. 2000) (citation, internal quotation marks and alterations omitted). Finding no such circumstances, we affirm the district court's instructional decision.

According to Lafreniere, the instruction was "deficient and misleading in two important ways." First, he argues, "the instruction

only directs the jury to evaluate predisposition according to how quickly the defendant agreed to commit the offense." Anent to this challenge, Lafreniere also alleges that the instruction impermissibly directed the jury "to explore what motives the defendant might [have] had if he displayed any hesitation or reluctance."

In instructing the jury on inducement, the trial court referred to the element of predisposition as follows: "[A] defendant may not be convicted of a crime if it was the Government that not only gave the defendant the idea to commit the crime, but also persuaded him to commit a crime that he was not ready and willing –that is, predisposed– to commit before Government officials or agents first spoke with him."  "On the other hand," the court continued, "if the defendant was predisposed to violate the law under circumstances making it desirable in his view to do so, and the Government merely presented him with those circumstances, that would not constitute entrapment." Moreover, the trial court specifically instructed the jury on predisposition:

> You must decide if the Government has satisfied its burden to prove beyond a reasonable doubt that, prior to first being approached by Government agents, the defendant was predisposed, or ready and willing, to commit the crime in any event.
> If you find beyond a reasonable doubt that the defendant was predisposed –that is, ready and willing– to commit the offenses charged, and the Government merely offered a favorable opportunity to commit them, then you should find that the defendant was not entrapped.

-13-

You may consider as evidence on this point a defendant's initial willingness or unwillingness to consider the crime. You may also decide whether evidence of a defendant's hesitation at the criminal suggestions reflects the conscience of an innocent person or merely the caution of a criminal.

The trial court's instruction neatly followed our jurisprudence on entrapment. Specifically, calling upon the jury's attention to a defendant's readiness to commit the crime comported with our statement in Gifford, to the effect that "ready commission of the criminal act can itself adequately evince an individual's predisposition." 17 F.3d at 469. Moreover, contrary to Lafreniere's contention, the trial court did not solely refer to a defendant's readiness to commit the offense; it also directed the jury to examine whether Lafreniere "was predisposed to violate the law under circumstances making it desirable in his view to do so," having been merely presented with the opportunity to do so, and prior to being approached by government agents. This part of the court's instruction echoes the test set forth in Gendron to assess predisposition; that is, asking "how the defendant likely would have reacted to an *ordinary* opportunity to commit the crime." 18 F.3d at 962. Furthermore, the district court instructed the jury that it may "consider as evidence [of predisposition] a defendant's initial willingness or unwillingness to consider the crime." The court's indication to the jury to "decide whether evidence of a defendant's hesitation at the criminal

-14-

suggestions reflects the conscience of an innocent person or merely the caution of a criminal," was also in accordance with our case law.  See, e.g., United States v. Tejeda, 974 F.2d 210, 219 (1st Cir. 1992) (evaluating whether the defendant's delay in committing the crime resulted from "an experienced person's wariness in dealing with a comparative stranger"); United States v. Pratt, 913 F.2d 982, 989 (1st Cir. 1990) (concluding that the defendant's failure to make telephone calls and appear at meetings in relation to a drug transaction was attributable to difficulties in raising the purchase money).

        Second, Lafreniere alleges that the instruction failed to direct the jury to "make any examination of the defendant's background."  In this connection, he argues that, due to his participation in two government-orchestrated heroin transactions, the instruction should have offered guidance as to which of the transactions should have been taken into consideration when assessing predisposition.  We find, however, no error in the trial court's charge.  The jury was specifically instructed to assess predisposition prior to any contact with government officials.  Regarding Lafreniere's background, we note that "[w]hile a more precisely tailored instruction might well have been suitable if specially sought, such refinements tailoring the language to the situation require that the judge be advised of the request." Alzate, 70 F.3d at 201.  Reviewing the charge "as a whole," in the context of all the evidence presented at trial, we

-15-

fail to find reversible error.  <u>Alicea</u>, 205 F.3d at 484.

### C. Sentencing

After oral argument was held, letters were transmitted to the court under Fed. R. App. P. 28(j) calling our attention to the recent Supreme Court decision in <u>Apprendi</u> v. <u>New Jersey</u>, — U.S. — (2000), 120 S. Ct. 2348 (2000).  While the letters were transmitted by two of Lafreniere's co-defendants, we extended an invitation to Lafreniere and the government to supplement their briefs addressing the possible relevance of <u>Apprendi</u> and, assuming that <u>Apprendi</u> applies, addressing the issue of prejudice.  Such memoranda having been filed, the matter is now properly submitted for disposition.

The Supreme Court in <u>Appprendi</u> held as a matter of constitutional law that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  120 S. Ct. at 2362-63.  Invoking this rule, Lafreniere seeks to have his sentence vacated because the amount of the heroin attributed to him was never submitted to the jury and proved beyond a reasonable doubt.  Because Lafreniere did not raise this issue below, we review for plain error.  <u>See</u> <u>United States</u> v. <u>Mojica-Báez</u>, 229 F.3d 292, 307 (1st Cir. 2000).

-16-

Lafreniere makes two arguments on appeal: first, that the district court imposed a sentence above the lowest statutory maximum provided by 21 U.S.C. § 841(b)(1)(B); and second, that the district court erroneously imposed a sentence in excess of the lowest statutory mandatory minimum.

Lafreniere was convicted of conspiracy to possess with intention to distribute and to distribute heroin, in violation of 21 U.S.C. § 846. The amount of heroin attributed to him was not found by the jury beyond a reasonable doubt. Instead, it was determined by the district court under a preponderance of evidence standard at the sentencing hearing. Under this standard, the district court determined that the transaction involved from 1 to 3 kilograms of heroin. Based on its findings the court sentenced Lafreniere to a ten year mandatory minimum sentence under 841(b)(1)(A).

The statutory framework involved in this case begins with Section 846, which provides that the penalty for an attempt or conspiracy to commit a drug trafficking offense shall be the same as the penalty for the offense that was the object of the attempt or conspiracy. 21 U.S.C. § 846. The underlying offense is set out in section 841(a)(1), which makes it unlawful to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

21 U.S.C. § 841(a)(1). Section 841(b)(1)(A)-(D), in turn, establishes the penalties applicable to a violation of section 841(a)(1). Section 841(b)(1)(C), the statutory catchall authorizes a term of imprisonment for a schedule I or II narcotic, such as heroin, without reference to drug quantity, of "not more than 20 years." 21 U.S.C. § 841(b)(1)(C).

Lafreniere first argues that the district court imposed a sentence above the lowest statutory maximum provided in Section 841. In support of his argument he relies on the Ninth Circuit case of United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000). In that case, the jury made no finding as to the specific amount of marijuana that the defendant possessed with the intent to distribute. Similarly, the judge determined the quantity of drugs using the preponderance of evidence standard. The error occurred when the district court's finding imposed a sentence that went beyond the five year maximum for an undetermined amount of marijuana. Nordby was sentenced to the ten years under 21 U.S.C. § 841(b)(1)(A)(vii). However, 21 U.S.C. § 841(b)(1)(D) states that "in the case of less than 50 kilograms of marijuana, except in the case of 50 or more marijuana plants regardless of weight . . . [the defendant shall] be sentenced to a term of imprisonment of not more than 5 years." Id. at 1056-57. Therefore, the Ninth Circuit found the ten year sentence exceeded the maximum

-18-

allowed for a marijuana conviction under 21 U.S.C. § 841 (b)(1)(D).

Although he does not spell out his argument, it appears that Lafreniere believes his case is exactly like Nordby, because his sentence exceeded the statutory maximum provided in 21 U.S.C. § 841(b)(1)(A). However, his reliance is misplaced. First, unlike Nordby, Lafreniere was convicted of a heroin offense and not a marijuana offense. Therefore, the five year statutory maximum provision of Section 841(b)(1)(D), that was exceeded in Nordby, is inapplicable to the case at bar. As such, the correct "statutory maximum" for a schedule two substance, like heroin, is found in the catchall provision of Section 841(b)(1)(C). This section states that "in the case of a controlled substance in schedule I or II . . . except as provided in subparagraphs (A),(B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years." 21 U.S.C. § 841(b)(1)(C). Therefore, since the district court sentenced Lafreniere to a term of 10 years, well below the maximum of twenty years, his reliance on Nordby is incorrect.

Lafreniere also argues that the district court erroneously imposed a sentence in excess of the lowest statutory mandatory minimum, and invites the court to read Apprendi more broadly to include mandatory minimums. Under Lafreniere's proposed reading, any factor that would increase the mandatory minimum penalty associated with an offense, albeit within the statutory maximum, would also have to be

submitted to the jury and proved beyond a reasonable doubt.

The main obstacle to this proposition is Apprendi itself. The majority in Apprendi declined to overrule their previous decision in McMillan v. Pennsylvania, 477 U.S. 79 (1965), which authorizes legislatures to increase minimum penalties based upon non-jury factual determinations, as long as the penalty imposed does not exceed the maximum range. See Apprendi, 120 S. Ct. at — n.13. As the Eighth Circuit noted in Aquayo-Delgado:

> If the non-jury factual determination only narrows the sentencing judge's discretion within the range already authorized by the offense of conviction . . ., then the governing constitutional standard is provided by McMillan. As we have said, McMillan allows the legislature to raise the minimum penalty associated with a crime based on non-jury factual findings, as long as the penalty is within the range specified for the crime for which the defendant was convicted by the jury. Apprendi expressly states that McMillan is still good law . . . .

220 F.3d 926, 933-34 (5th Cir. 2000); see also United States v. Meshack, 225 F.3d 556, 576-77 (5th Cir. 2000) (approving of a more limited reading of Apprendi). We believe that this is the proper construction under existing precedent; and therefore, refuse to apply Apprendi in cases concerning the mandatory minimums.

Our holding today is that no Apprendi violation occurs when the district court sentences the defendant within the statutory maximum, regardless that drug quantity was never determined by the jury beyond a reasonable doubt. This holding

-20-

is consistent with those of our sister circuits which have had the opportunity to address challenges similar to the ones presented by Lafreniere. See, e.g., Meshack, 225 F.3d at 576-77; Aguayo-Delgado, 220 F.3d at 926; United States v. Gerrow, 2000 WL 1675594, at *2 (11th Cir. Nov. 8, 2000); United States v. Angle, 230 F.3d 113, 123 (4th Cir. 2000); United States v. Chavez, 230 F.3d 1089, 1091 (8th Cir. 2000).

## III. CONCLUSION

For the foregoing reasons, we affirm the conviction and sentence.