**Jerry Lee ROBERTSON,**

v.

**UNITED STATES of America.**

No. C.A. 01–008L.

United States District Court,
D. Rhode Island.

April 30, 2001.

## MEMORANDUM AND ORDER

Lagueux, District Judge.

The matter before the Court is a motion filed by Petitioner, Jerry Lee Robertson, to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. In the motion filed on or about January 9, 2001, Petitioner makes four claims.

1. That his counsel was ineffective because counsel failed to advise him that he had a right to refrain from testifying.

2. That his counsel was ineffective because counsel elicited information about Petitioner's two prior felony convictions during his direct testimony.

3. That the decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) requires that sentencing enhancements for obstruction of justice and firearm possession be present-

ed to a jury and guilt determined beyond a reasonable doubt.

4. That the decision in *Apprendi* requires the amount of drugs to be stated in the indictment and proven beyond a reasonable doubt in order for the Court to have jurisdiction over the matter.

## BACKGROUND FACTS

On October 8, 1997, a grand jury in the District of Rhode Island indicted Petitioner on two counts. The first was for possessing heroin with intent to distribute within 1000 feet of a school, 21 U.S.C. §§ 841(a)(1) and 860(a); and, the second, for possessing a firearm after a previous felony conviction, 18 U.S.C. § 922(g)(1). Petitioner was found guilty of both counts on June 26, 1998 after a jury trial. On September 23, 1998, he was sentenced to 137 months of imprisonment, 6 years of supervised release, no fine, and a special assessment of $100 on Count 1. On Count 2, this Court imposed a concurrent sentence of 120 months of imprisonment (the statutory maximum), 3 years of supervised release to be served concurrently, no fine, and a special assessment of $100.

Petitioner timely appealed. His primary claim was that the Court erred by failing to give him prior notice of its intent to impose a two-level upward adjustment for obstruction of justice pursuant to U.S.S.G. § 3C1.1; and for failing to state on the record findings in support of its decision to impose that two-level adjustment for obstruction of justice. In a supplemental brief, Petitioner contested the sufficiency of the affidavit in support of the search warrant, contended that the evidence was insufficient to convict, claimed that the Court's instructions to the jury were flawed, and argued that the guidelines' calculations were inaccurate and the Court was not justified in departing upward on the Criminal History Category. He did not contend that the indictment was defective in any way. In an unpublished opinion dated June 24, 1999, the First Circuit affirmed both the conviction and the sentence imposed. Petitioner then filed a petition for a writ of certiorari with the U.S. Supreme Court on or about November 29, 1999. That was denied on January 10, 2000. *Robertson v. United States*, 528 U.S. 1095, 120 S.Ct. 835, 145 L.Ed.2d 702 (2000).

## FACTS PROVED AT TRIAL

On September 10, 1997, at approximately 4:30 p.m. Detectives Larry Lepore, Peter Rocchio, Michael Long, Sergeant Nicholas Cardarelli and other officers of the Providence Police Department went to the first floor apartment at 221 Mount Pleasant Avenue for the purpose of executing a search warrant. The officers were able to enter through an open front door. Two people were found in the living room and they were watched as officers checked the rest of the apartment. Detective Lepore went into the master bedroom and found Petitioner and Bernice Torres on the bed. They were watching television or playing video games on the TV. (6/22/98 Tr. at 35, 40, 41, 69–71, 107–108).

Both Petitioner and Torres were secured in the living room along with the other two. The officers then began a search of the apartment. Detective Lepore searched the bedroom. The headboard for the bed had shelves and mirrored doors. On a shelf in the headboard, he found a plastic bag containing slightly less than 25 grams of heroin. On another shelf, on the same side of the headboard, he found a .44 caliber Sturm Ruger, model Blackhawk revolver, serial number 46–34002. On top of the headboard, Detective Lepore found nine glassine bags of heroin. Elsewhere in the bedroom, Detective Lepore found a NYNEX bill and a Narragansett Electric bill with Petitioner's name on them listing the Mount Pleasant Avenue

address. He also seized a mailer for a NYNEX calling card, a rubber stamp and a Motorola pager. The rubber stamp had a skull or death's head wearing a top hat with the words "THE BOSS" underneath. (6/22/98 Tr. at 72–82, 105–110, 114–118, 120–121).

Detective Rocchio searched the living room. In a closet, he found $2,500 hidden in the bag area of a vacuum cleaner. In the same closet, he found a box which held four cellular phones. (6/22/98 Tr. at 31–35, 39, 45, 50–56).

The landlord, Matthew Cote, testified that he owned the house at 221 Mount Pleasant Avenue. He identified Petitioner as the individual who rented the first floor apartment. According to Cote, Petitioner was the only tenant of that apartment. Petitioner had no written lease and rented on a month to month basis. Cote testified that Petitioner was the only one who paid the rent and that he paid in cash. (6/22/98 Tr. at 26–28).

Isabella Lee testified that she was the principal of George West School. She stated that it was located between Mount Pleasant Avenue, Roanoke Street and Beaufort Street. Mrs. Lee confirmed that George West was a school within the Providence public school system. She also testified that the iron railings surrounding the school were on school property. (6/22/98 Tr. at 24–25).

Lieutenant Kenneth Cohen of the Providence Police Department testified that he measured the distance from 221 Mount Pleasant Avenue to the iron railing around George West School. That distance was reported as approximately 338 feet. (6/23/98 Tr. at 24–27).

Officer Kenneth Vinacco testified that he was an armorer with the Providence Police Department. His duties included testing firearms and determining their origin. Officer Vinacco testified that the .45 caliber Sturm Ruger Blackhawk revolver functioned as a firearm and was manufactured in Connecticut. (6/23/98 Tr. at 29–33).

Michael Liberto, a chemist with the Rhode Island Department of Health, testified about the analysis and weight of the seized drugs. He confirmed that the drugs were heroin. The large bag weighed 24.87 grams and eight of the nine glassine packets weighed 0.15 grams in aggregate. The contents of the ninth glassine packet had been consumed during testing. (6/23/98 Tr. at 41–61).

Detective Lepore testified as an expert witness. He stated that it was his opinion that the heroin possession in this case was more consistent with distribution than personal use. He based his opinion on the amount of heroin being in excess of that normally held by individuals for personal use, the presence of the nine glassine packets none of which were stamped with a logo or trademark, the presence of the $2,500 hidden in the vacuum cleaner, the pager and four cellular telephones, the presence of the firearm, and the rubber stamp with the skull, top hat and "THE BOSS" on it. (6/22/98 Tr. at 86–88, 92–95).

Detective Lepore further testified that he did not find any of the paraphernalia his training and experience have led him to expect to find when heroin is held for personal use. Detective Lepore testified that, in his experience, heroin users did not possess 25 grams at one time. Nor did they buy in bulk. He indicated that the street value of the heroin was approximately $3,000. Detective Lepore testified that the usual amount bought by a user would be an individual glassine packet such as those seized. Each packet is sold for approximately $10. (6/22/98 Tr. at 83, 87, 90–92; 6/23/98 Tr. at 22–23).

Petitioner stipulated that he had a prior felony conviction.

Bernice Torres testified for the defense. She said that she had met Petitioner sometime during the summer of 1997 and began to see him not long after that. Petitioner told her that he sold cars, but the only car she had seen him work on was her own. Torres testified that she began to spend one or two nights a week with Petitioner about the time he moved into the apartment at 221 Mount Pleasant Avenue. She claimed that she kept some personal items on the left side of the headboard. She did this because Petitioner respected her privacy and did not go into that side of the headboard. (6/23/98 Tr. at 72–76, 91–92, 102).

Sometime during the summer of 1996, according to her testimony, she was outside of her apartment when a man she did not know asked her if she wanted to buy a gun. Torres said that because she thought the gun might be an antique, she bought it for $40.00 with the hope that it would increase in value. (6/23/98 Tr. at 109–111).

Labor Day weekend 1997, she stayed at Petitioner's apartment while he was in Virginia. She took the gun there and put it in her side of the headboard on a shelf. She never told him the gun was there. As for the bag of heroin, Torres said that she had found it in clothing belonging to Petitioner. When she questioned him about it, he told her that he used it to enhance his sexual performance. She expressed her disapproval, took the bag from him and put it on her side of the headboard. Torres said she had never seen Petitioner use or sell drugs. (6/23/98 Tr. at 98–104, 111).

On September 10th, when Petitioner was arrested, Torres saw the police take the gun and did not tell them it was hers because she was frightened. The pager that was seized was hers as well; however, she did not tell the police that either. (6/23/98 Tr. at 95, 113–114; 6/24/98 Tr. at 7–10).

On cross examination Torres testified that she had never owned any other firearms. Despite purchasing this one as an investment, she never checked with anyone as to its value. She had never fired a gun nor did she have bullets for this one. She also did not know the man from whom she claimed to have purchased the gun. She left the revolver at Petitioner's apartment when she went home after the Labor Day weekend. She claimed to have seen Petitioner talk to three others about their cars or do some work on them. She never saw him at a place of work. She testified that she never saw any signs that Petitioner used drugs. Although she was upset that he had been arrested, she never said anything to the police or to the government about the gun being hers. (6/24/98 Tr. at 11–14, 16–22).

Petitioner also testified. He said that he had moved into the apartment at 221 Mount Pleasant Avenue a couple of months prior to his arrest. He paid his rent and all of his bills in cash. He did not keep his money in any bank account. He kept his money in various hiding places in his apartment including the refrigerator and the vacuum cleaner. He stated that, at the time of his arrest, he kept $3,000 in the vacuum in three $1,000 bundles. He claimed that he had received just under $15,000 in proceeds from a real estate transaction in August 1996 for property he had owned in Louisiana. He admitted that no one else lived in the apartment with him. (6/24/98 Tr. at 47–49, 60–66).

Petitioner claimed that he made his living buying cars, fixing them up and then selling them for a profit. Often he would buy cars from C & L Auto, make a down payment, and pay the balance on the car after he sold it. He testified that he was not good at reading and writing. He did not keep a lot of paperwork on his transactions. He claimed to have made approxi-

mately $11,000 from car sales in recent months. (6/24/98 Tr. at 51–59, 69–74, 130–131).

Petitioner claimed that after he became intimate with Torres, he began experiencing certain sexual difficulties. He said he spoke to a friend, whose name he did not know, who told him that snorting heroin before sex would enhance his sexual performance. Based on that advice he began using heroin and became addicted. (6/24/98 Tr. at 86–88, 123–124).

On September 10th, he had 9 glassine packets of heroin on top of the headboard. According to his testimony, he got up before Torres that day, went out, and bought the bag of heroin which was recovered from the headboard. Petitioner reiterated what Torres said, i.e., that she found the bag of heroin and, after an argument, she took it from him. He testified that he had never sold heroin. (6/24/98 Tr. at 93–98).

Petitioner also testified that he had never seen the gun before it was found by the Providence Police on September 10th. Petitioner admitted that he had a prior conviction for being a felon in possession of a firearm and that he had a conviction for conspiracy to distribute narcotics. He claimed that he got the cellular phones from a friend in the construction business. (6/24/98 Tr. at 101–104, 109).

On cross examination Petitioner admitted that his conviction for conspiracy to distribute narcotics involved 19.2 grams of heroin. He stated that he first began to use heroin in the summer of 1997. He could not identify his source and only said he bought it from some guy on Broad Street. (6/24/98 Tr. at 113–114, 116, 118).

Petitioner said he bought heroin in "gram" amounts a couple of times and that, at one point, he bought a "brown"—5 bundles of 10 glassine packets—for $130 or $140. He stated that he only knew it was called a "brown" because Detective Lepore had described it during his testimony. He claimed that the "brown" lasted about 2½ days. He also claimed that he became addicted to heroin and became sick unless he took it every day. He testified that he took 8 glassine packets at a time. (6/24/98 Tr. at 118–124, 137–141, 146–147).

Petitioner claimed he bought and sold cars for a living and that at the time of his arrest he owned seven cars. He could not state how much money he made on average per year from car sales. He stated that he did not file taxes and so did not declare his income from car sales. He claimed to have records supporting his car sales but did not produce them. (6/24/98 Tr. at 51–52, 125–135, 141–144).

Petitioner claimed that after his arrest he went through heroin withdrawal. He told the court and jury that he did this by himself without help from anyone. He could not name a single person who saw him suffering from withdrawal. (6/24/98 Tr. at 124–125, 140–141).

On rebuttal, the government called Detective Lepore who testified that he had observed and spoken with heroin addicts who used eight or more packets a day. They were typically unkempt, lacked personal hygiene, and were focused on their addiction to the exclusion of other pursuits. He testified that Petitioner did not exhibit any signs of heroin addiction on September 10th. (6/25/98 Tr. at 3–5, 7–9).

The jury found Petitioner guilty of both counts as charged.

*PRESENTENCE REPORT*

The Presentence Report (PSR) employed the November 1, 1997 version of the sentencing guidelines. Paragraph 13, of the PSR noted the government's recommendation, contained in the prosecution version, that the Court should consider applying a two-level upward adjustment

under U.S.S.G. § 3C1.1 for obstruction of justice based on the testimony of both Petitioner and his girlfriend, Ms. Torres. The probation officer did not include the adjustment in his calculation, instead leaving that decision to the Court. PSR at 6–7, ¶ 13.

The probation officer made the guidelines calculation as follows. Under U.S.S.G. § 2D1.1(a)(3), the base offense level was 18 predicated on a total amount of heroin of between 20 and 40 grams. Two levels were added for the firearm possession and an additional two levels were added because the offense took place near a school. U.S.S.G. §§ 2D1.1(b)(1) and 2D1.2(a)(1). The total offense level for count 1 was 22. PSR at 7–8, ¶¶ 16–24.

Count 2 was assigned a base offense level of 20. U.S.S.G. § 2K2.1(a)(4)(A). Because the probation officer found that the firearm had been possessed in connection with another felony offense, 4 levels were added under § 2K2.1(b)(5). This yielded a total offense level of 24 for count 2. The counts were combined into one group under U.S.S.G. § 3D1.2(c). The higher offense level of 24 was used as the combined offense level pursuant to § 3D1.3(a). PSR at 8–9, ¶¶ 26–35.

The probation officer determined that Petitioner had 5 criminal history points which placed him at a Criminal History Category (CHC) III. PSR at 9–11, ¶¶ 36–48. The probation officer also noted that at the time of the instant offenses, he had two outstanding warrants, one in Massachusetts and one in Louisiana. PSR at 12, ¶¶ 50–51.

The offense level of 24 coupled with a CHC III yielded a guideline range of 63 to 78 months. The probation officer noted that as Petitioner was on bail at the time he committed these offenses, the Court might wish to consider whether an upward departure was warranted. He further noted that, given Petitioner's prior record, the Court might wish to consider whether a CHC III adequately reflected his propensity to commit further crimes. PSR at 18, ¶¶ 87–88.

Petitioner filed a number of objections to the PSR. Most amounted to a reiteration that his testimony at trial was truthful, as was that of Ms. Torres, and that he should receive a reduction for acceptance of responsibility. Further, because he had testified truthfully, no adjustment for obstruction of justice was warranted. Addendum to PSR at II–III.

The probation officer did not find any of Petitioner's arguments persuasive. Addendum to PSR at IV–VI.

## SENTENCING HEARING

Petitioner appeared before this Court for sentencing on September 23, 1998. As he had filed a motion for new trial, pro se, the Court disposed of that matter prior to beginning the sentencing hearing. While explaining the denial of the motion, this writer noted that both Petitioner and Torres had lied during the trial. The Court stated:

> Before we get to sentencing, a motion for a new trial was filed by the defendant pro se and I will dispose of that very quickly. I deny that motion for two reasons: Number (1), it's untimely; and secondly, it has no merit whatsoever. I am satisfied that the credible evidence in this case justifies conviction of this defendant's possession of heroin with intent to distribute it and possession of a firearm after a previous conviction of a felony. His testimony that he was addicted to heroin, and bought this heroin for personal use, is unbelievable and incredible, and an outright bald-faced lie. The testimony of his girlfriend, Miss Torres, that she bought the gun and brought it over there, and that

she never told him about it, and his testimony that he knew nothing about that gun, are both bald-faced lies, and I intend, at sentencing, to increase the total offense level for obstruction of justice, perjury by both of those witnesses during this trial. The jurors saw right through it, and I saw right through it, and the jury came to a just result in this case. The defendant is guilty on both counts, and the motion for a new trial is therefore denied.

(9/23/98 Tr. at 2–3).

The Court then gave defense counsel an opportunity to address the objections Petitioner had to the PSR. Petitioner's counsel specifically addressed the issue of obstruction, arguing that neither Petitioner nor Torres had lied during their testimony. Counsel also argued that Petitioner should receive credit for acceptance of responsibility. (9/23/98 Tr. at 5–7). The government reiterated its position that the Court should enhance the sentence based on the false testimony and opposed the adjustment for acceptance of responsibility. (9/23/98 Tr. at 3–4,7).

The Court found that the offense level of 24 calculated by the probation officer for count 2 applied, and adding 2 levels for obstruction of justice, yielded a total offense level of 26. The Court then ruled that Petitioner had not accepted responsibility and so no downward adjustment for that was warranted. The Court also found that CHC III under-represented Petitioner's criminal history because Petitioner had two outstanding warrants at the time he committed the instant offense and as such, an upward departure was warranted. The Court increased Petitioner's CHC by two levels, one for each outstanding warrant. Thus the offense level of 26 coupled with CHC V yielded a guideline range of 100 to 137 months. Petitioner was sentenced to 137 months of imprisonment as

to count 1 and 120 months on count 2 to be served concurrently. (9/23/98 Tr. at 7–9, 19–20).

## THE LAW GOVERNING MOTIONS UNDER 28 U.S.C. § 2255

Section 2255 provides in pertinent part: A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

 A motion under 28 U.S.C. § 2255 is a substitute for habeas corpus. Relief is available under this section only if the same relief is available under the writ. *Hill v. United States,* 368 U.S. 424, 427, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). The grounds justifying relief under § 2255 are limited. Section 2255 does not grant to a defendant the right to retry cases in which he has been adjudged guilty. *Taylor v. United States,* 177 F.2d 194, 195 (4th Cir. 1949).

In *United States v. Addonizio,* 442 U.S. 178, 184–85, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), the Supreme Court stated:

It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. . . .

. . . . .

. . . [U]nless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited. The Court has held that an error of law does not pro-

vide a basis for collateral attack unless the claimed error constituted "a fundamental defect which inherently results in a complete miscarriage of justice."

Similar limitations apply with respect to claimed errors of fact.

*Id.* (quoting *Hill* 368 U.S. at 428, 82 S.Ct. 468) (citations omitted). *See also, Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974).

 A collateral attack may not do service for an appeal. *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Dirring v. United States,* 370 F.2d 862, 865 (1st Cir.1967). To obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on a direct appeal. The standard of review of a § 2255 motion for alleged trial errors to which no contemporaneous objection was made is not the plain error standard, but the cause and actual prejudice standard. *Frady,* 456 U.S. at 166–67, 102 S.Ct. 1584. A defendant cannot raise issues in a federal habeas proceeding that he failed to raise at trial or on direct appeal absent a showing of cause for the failure and a showing of prejudice. *Brache v. United States,* 165 F.3d 99, 102 (1st Cir.1999).

### THE LAW APPLICABLE TO AN INEFFECTIVE ASSISTANCE CLAIM

 In considering the issue of effective representation, the District Court must first identify the acts or omissions of counsel. *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court should then determine whether these "acts or omissions were outside the wide range of professionally competent assistance" and, if so, whether the error affected the judgment. *Id.* Counsel's representation must fall below an objective standard of reasonableness, *and* the defendant must show preju-

dice. *Id.* at 687–88, 693, 104 S.Ct. 2052. There must be a reasonable probability that but for the attorney's unprofessional errors the result would be different. *Id.* at 694, 104 S.Ct. 2052. There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. 2052. The effective assistance of counsel standard does not require the "useless charade" of presenting a meritless defense. *United States v. Cronic,* 466 U.S. 648, 656–57 n. 19, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Counsel need not jump through every conceivable hoop, or engage in futile exercises. *United States v. Pellerito,* 878 F.2d 1535, 1540 (1st Cir.1989). The defendant is entitled to an effective defense, not a perfect one nor a successful one. *Scarpa v. DuBois,* 38 F.3d 1, 8 (1st Cir.1994). The attorney's judgment need not be right so long as it is reasonable. *United States v. McGill,* 11 F.3d 223, 227 (1st Cir.1993). A reviewing court should not use the benefit of hindsight to second-guess tactical decisions made by an attorney unless the decisions are unreasonable. *Perron v. Perrin,* 742 F.2d 669, 673 (1st Cir.1984)(citing *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052).

### DISCUSSION

Having failed with his blunderbuss attack on the verdict and sentence on appeal, Petitioner now resorts to the all-too-familiar jail-house lawyer tactic of attacking the performance of his trial counsel. The result is predictable. All of Petitioner's claims are without merit. They will be discussed in the order presented.

### Right Not to Testify

 Petitioner contends that his attorney was ineffective because he failed to inform him that he had a right to remain silent at trial. Petitioner claims that counsel failed to discuss this option with him or

"the strategy in remaining silent as oppose (*sic* ) to testifying and the consequences of testifying." Petitioner further claims that the information he presented in his testimony could have been presented by his other witness, Ms. Torres. He also faults counsel for failing to tell him that by testifying, he opened the door concerning his prior convictions. Perhaps most importantly, Petitioner claims that his counsel failed to warn him that if his testimony was found to be false, he could be assessed extra punishment for obstruction of justice. These contentions cannot form a basis for the granting of his motion.

A cursory review of Petitioner's record shows that, in addition to this conviction, he has two prior felony convictions. On February 29, 1989, Petitioner was convicted in the Rhode Island Superior Court after a plea of nolo contendere to a charge of conspiracy to violate the Controlled Substances Act. As a precursor to that plea he was advised of his rights, including his right against self incrimination and his right not to testify, if he chose to do so. *See* Request to Enter a Plea of Nolo Contendere, case P2/89–0446 in Providence Superior Court.

On March 15, 1991, Petitioner was sentenced after pleading guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), by Judge Pettine of this Court. The Rule 11 colloquy has long contained a recitation of the rights waived upon a plea of guilty which includes the waiver of the right to remain silent. This Court must presume that such an inquiry was made at the time Petitioner entered his plea of guilty before Judge Pettine.

Most importantly, this Court discussed this issue at the outset of the trial in the preliminary instructions to the jury. Petitioner was present when the jury was instructed as follows:

When the government has concluded the presentation of its case through counsel, it will rest, and then the defendant has an opportunity to go forward. The defendant has several choices at that point. The defendant can choose to rest immediately and offer no evidence at all and argue to you that the Government has failed to prove its case beyond a reasonable doubt. The defendant can choose to put on evidence and make an opening statement to you through counsel, and can choose not to take the witness stand. If the defendant chooses not to take the witness stand, the defendant cannot be held to a burden of proof in the case. In other words, you can draw no inference adverse to the defendant because he chooses to exercise his constitutional right not to testify.... The defendant can choose to take the witness stand and offer other evidence, in which case you treat him as any other witness. Determine his credibility as any other witness.

(6/22/98 Tr. at 7–8). In addition, Petitioner was present when the jury was impaneled. At that time the Court advised the whole panel that in order to serve as a juror in a criminal case, the juror chosen must accept the proposition that a defendant has a right not to testify, and if that right is exercised, no adverse inference can be drawn against him. Therefore, Petitioner knew that he had a right not to testify at trial and his contention to the contrary is just as disingenuous as the testimony he gave at trial.

Likewise, his claim that he did not know he could suffer some penalty for testifying falsely is incredible. Merely taking the oath prefatory to testifying informs a witness that truthful testimony is expected. That the untruthful witness may not be aware of the exact penalty to be suffered does not mean that he is unaware of the prohibition against false testimony.

Whether and to what extent counsel had such a discussion with Petitioner is irrelevant. Petitioner knew he had the right not to testify and if he chose to testify and gave false testimony there could be a serious penalty. It is not necessary for the Court to conduct an evidentiary hearing on this point given the clear facts on the record.

██ Petitioner also contends that much of the information he wished to present could have come in through his witness, Ms. Torres. He misses the mark here as well. The Court recalls Petitioner's premise that he used the heroin to enhance his sexual performance and that he became addicted to it. Ms. Torres, however, testified that she had never seen Petitioner use drugs and was unaware of any heroin use on his part until the day of his arrest. (6/23/98 Tr. at 100, 102; 6/24/98 Tr. at 20–21). She did not and could not (because of the hearsay rule) support Petitioner's claims. Given the nature of Petitioner's unique defense to the drug trafficking charge, it is difficult to see how it could have been presented at all absent his testimony. Thus, counsel's "failure" to introduce the defense through Ms. Torres was a practical and legal impossibility. This cannot support a claim of ineffective assistance of counsel. There is no need for an evidentiary hearing on this point as the record of trial clearly supports this conclusion.

*Introduction of Petitioner's Prior Convictions*

██ Petitioner claims that his counsel erred in introducing the fact of his two prior felony convictions. He claims that such evidence was inadmissible and that his counsel was ineffective as a result. He has premised his entire inadmissibility argument upon Fed.R.Evid. 404(b). He misses the mark again.

██ Rule 404(b) prohibits admission of evidence of prior bad acts where that evidence is admitted to prove the criminal character or propensity to commit crimes by the defendant. Such evidence which is found by the court to have special relevance to an issue in the case such as knowledge or intent and does not include "bad character or propensity as a necessary link in the inferential chain" is admissible. *United States v. Varoudakis,* 233 F.3d 113, 118 (1st Cir.2000)(quoting *United States v. Frankhauser,* 80 F.3d 641, 648 (1st Cir.1996)).

Petitioner's defense rested squarely on lack of knowledge as to the firearm possession and lack of intent as to the drug charge. Here, counsel and Petitioner were on notice that the government might seek to use the fact of the prior convictions pursuant to both Rules 404(b) and 609. In order to go forward with his defense of possession of the heroin strictly for personal use, Petitioner had to put his intent at issue and could only do so effectively through his own testimony. Counsel's decision to bring that material out on direct examination blunted, at least in part, the negative impact of that information. By bringing it out on direct, the fact of the prior convictions became a minor part of the case as a whole, whereas if counsel had failed to do so, those facts would have come out on cross-examination resulting in potentially much more damage to Petitioner's case. As it happened, in considering the case in totality, there was very little mention of either conviction by either side either during the trial or during argument. The evidence of Petitioner's guilt on both counts was overwhelming absent this evidence.

Petitioner also fails to acknowledge that his prior convictions were proper grist for impeachment under Rule 609(a). That rule permits the use of prior convictions to

impeach a witness or testifying defendant. "The premise behind the rule is that a witness who has previously been convicted of a felony, or a crime involving dishonesty or a false statement, is more likely to lie than is a person with a spotless past." *United States v. Norton*, 26 F.3d 240, 243 (1st Cir.1994). The Court properly instructed the jury that Petitioner's prior convictions could be considered in determining his credibility. (6/25/98 Tr. at 87).

Thus counsel's introduction of Petitioner's prior convictions did not amount to ineffective assistance of counsel. But, instead, reflected an understanding of the necessity of blunting potential impeachment material on direct examination so as to deny the government a powerful tool on cross-examination.

*Sentencing Factors and The Apprendi Decision*

In *Apprendi v. New Jersey*, 530 U.S. 466, 488–91, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Petitioner claims that the decision in *Apprendi* mandates that the sentencing guidelines adjustments for obstruction of justice and firearm possession be pleaded and proven beyond a reasonable doubt. He has displayed a complete misunderstanding of the law.

Robertson's conviction and sentence became final prior to the Supreme Court's issuance of its decision in *Apprendi*. The

Petitioner now seeks relief pursuant to § 2255. Therefore, the threshold issue is whether the rule enunciated in *Apprendi* is retroactively applicable to cases on collateral review.

In general, new constitutional rules of criminal procedure are not applicable to cases which became final before the new rules were announced. *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)(O'Connor, J., plurality opinion as to parts IV and V, joined by Rehnquist, C.J., and Scalia and Kennedy, JJ.). Certain narrow exceptions can apply. For instance, certain "watershed rules" of criminal procedure, i.e. those which "properly alter our understanding of the bedrock procedural elements that must be found to vitiate the fairness of a particular conviction," are subject to retroactive application. *Id.* at 311, 109 S.Ct. 1060 (*quoting Mackey v. United States*, 401 U.S. 667, 693, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in judgments in part and dissenting in part)). In order for the exception to apply, "the procedure at issue must implicate the fundamental fairness of the trial." *Id.* at 312, 109 S.Ct. 1060. In addition, the exception is limited to "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Id.* at 313, 109 S.Ct. 1060.

Neither the Supreme Court nor the United States Court of Appeals for the First Circuit has addressed whether, under *Teague*, the rule enunciated in *Apprendi* is retroactively applicable to cases on collateral review.[1] In fact, only two

---

1. In *Sustache–Rivera v. United States*, 221 F.3d 8 (1st Cir.2000), the First Circuit addressed the separate issue of whether *Apprendi* claims satisfy the statutory requirements for the filing of successive § 2255 motions. Section 2255 provides for leave to file a successive petition where, *inter alia,* the petition

is "based on a new rule of constitutional law" that has been "made retroactive to cases on collateral review by the Supreme Court." Under § 2255, the retroactivity requirement is satisfied only when the Court either explicitly declares the rule's collateral availability or applies the rule in a collateral proceeding.

circuit courts have spoken on the issue. Both the Fourth and the Ninth Circuits have held that, under *Teague,* the *Apprendi* rule is not retroactively applicable. *See United States v. Sanders,* 247 F.3d 139 (4th Cir.2001); *Jones v. Smith,* 231 F.3d 1227 (9th Cir.2000). However, even assuming *arguendo,* that *Teague* permits collateral pursuit of *Apprendi* claims, Robertson's allegations are still without merit.

Petitioner was indicted and found guilty of possessing heroin with intent to distribute within 1000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1)and 860(a); and of possessing a firearm after a previous felony conviction, in violation of 18 U.S.C. § 922(g)(1). The applicable statutory penalty for the heroin charge is determined pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 860(a). Without reference to drug quantity, § 841(b)(1)(C) authorizes a maximum term of imprisonment of 20 years for a schedule I controlled substance, such as heroin. When, as here, a defendant commits a violation of § 841(a) after a prior conviction of a felony drug offense has become final, he is subject to a maximum term of 30–years' imprisonment.[2] 21 U.S.C. § 841(b)(1)(C).

Additionally, § 860(a) provides for enhanced penalties when a defendant commits a violation of § 841(a)(1) within 1000 feet of a school. Specifically, such a defendant is "subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of supervised release authorized by section 841(b) of this title for a first offense." 21 U.S.C. § 860.

The fact that Robertson had violated § 860 was determined by the jury beyond a reasonable doubt. Accordingly, on the heroin charge, Robertson was subject to a maximum term of imprisonment of 60 years.[3] However, Robertson was sentenced to 137 months of imprisonment on his heroin conviction, a sentence not only well below the 60 year statutory maximum, but also less than the lowest maximum penalty of 20 years specified in § 841(b)(1)(C).

The statutory maximum term of imprisonment for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) is 10 years. 18 U.S.C. § 924(a)(2). The Court imposed the statutory maximum.

Although sentence was imposed in accordance with the applicable statutory maximum for each count of conviction, Robertson argues that the court's imposition of sentence resulted in an *Apprendi* violation. Specifically, Robertson challenges the court's calculation of his guideline sentencing range.

In determining Petitioner's total offense level under the guidelines, the Court added two points for obstruction of justice. *See* U.S.S.G. § 3C1.1. In addition, Robertson's offense level included a four-point increase for possession of a firearm in connection with another felony offense. *See* U.S.S.G. § 2K2.1(b)(5). In substance, Petitioner alleges that, because these of-

---

*Sustache–Rivera,* 221 F.3d at 15 (*quoting In re Vial,* 115 F.3d 1192, 1197 (4th Cir.1997)). Thus, *Apprendi* claims do not satisfy § 2255's successive petition requirements. *Id.*

**2.** On November 18, 1997, in accordance with 21 U.S.C. § 851, the government filed an information setting forth the fact of Petitioner's prior state court felony drug conviction.

Robertson did not dispute the fact of this conviction.

**3.** This maximum is accurately reflected in the probation department's September 15, 1998, addendum to the presentence investigation report. The initial PSR incorrectly referenced a 40–year maximum term.

fense-level increases resulted in an increased guideline sentencing range and, accordingly, a lengthier sentence than he otherwise might have received, the factual determinations underlying the offense-level calculation should have been made by the jury pursuant to the reasonable doubt standard rather than by the sentencing court based upon a preponderance of the evidence norm.

This assertion is without merit. In fact, Petitioner's argument is contrary to the First Circuit's recent decisions regarding the reach of *Apprendi.*

In *U.S. v. Caba,* 241 F.3d 98 (1st Cir. 2001), the appellant challenged the sentence imposed following his conviction on cocaine and heroin distribution charges. Drug quantity was among the findings made by the court in calculating Caba's guideline sentencing range. *Id.* at 100. In determining drug quantity under the guidelines, the district court included approximately 144 grams of crack cocaine which the jury had acquitted Caba of possessing with intent to distribute. *Id.*

Although Caba received a sentence below the statutory maximum, he argued that the drug quantity finding should have been made by the jury rather than the court. *Id.* at 100–01. Caba asserted that *Apprendi* required a jury determination as to drug quantity because the finding significantly increased his guideline sentencing range and, hence, his sentence. *Id.* at 101.

The First Circuit rejected Caba's expansive reading of *Apprendi.*

By its own terms, the holding in *Apprendi* applies only when the disputed "fact" enlarges the applicable statutory maximum and the defendant's sentence exceeds the original maximum. [*Apprendi,* 120 S.Ct. at 2362–62]. For this reason, *Apprendi* simply does not apply to guideline findings (including, *inter*

*alia,* drug weight calculations) that increase the defendant's sentence, but do not elevate the sentence to a point beyond the lowest applicable statutory maximum. *United States v. LaFreniere,* 236 F.3d 41, 50 (1st Cir.2001); *United States v. Baltas,* 236 F.3d 27, 41 (1st Cir.2001); *United States v. Keith,* 230 F.3d 784, 787 (5th Cir.2000) (per curiam), *cert denied,* — U.S. —, 121 S.Ct. 1163, 148 L.Ed.2d 1023 (2001); *United States v. Hernandez–Guardado,* 228 F.3d 1017, 1027 (9th Cir.2000); *United States v. Aguayo–Delgado,* 220 F.3d 926, 933 (8th Cir.) *cert. denied,* — U.S. —, 121 S.Ct. 600, 148 L.Ed.2d 513 (2000). In other words, even after *Apprendi,* the existence *vel non* of sentencing factors that boost a defendant's sentence but do not trip a new statutory maximum remain grist for the district judge's mill under a preponderance-of-the-evidence standard.

*Caba,* 241 F.3d at 101.

Similarly, in *United States v. Robinson,* 241 F.3d 115 (1st Cir.2001), the Court of Appeals found no *Apprendi* violation where the actual sentence imposed for cocaine base related offenses was below the lowest statutory maximum applicable to such offenses (*i.e.* 20 years pursuant to § 841(b)(1)(C)). This was so even though the district court, in applying the sentencing guidelines, calculated drug quantity based upon a preponderance of the evidence standard and that finding adversely influenced the length of the defendant's sentence. *Robinson,* 241 F.3d at 119.

 Petitioner's claim must be rejected for these same reasons. On each count of conviction, Petitioner was sentenced below or at the applicable statutory maximum. That the Court's calculation of his offense level and, accordingly, his guideline sentencing range, may have resulted in a

higher sentence below the applicable statutory limit does not trigger *Apprendi* concerns. The facts upon which the Court based its guideline computation were properly determined by the Court based upon a preponderance of the evidence. *Apprendi* does not restrict the sentencing court's discretion in imposing a sentence within the statutory range. *Robinson,* 241 F.3d at 121 (*quoting Apprendi,* 530 U.S. at 481–82, 120 S.Ct. at 2358).

*The Indictment*

Petitioner also argues that the recent holding in *Apprendi* requires that the indictment must state both drug type and amount. As the indictment in this case clearly specified the controlled substance as heroin, the only issue is whether the drug quantity needed to be stated in the indictment. Petitioner contends that drug quantity is an element of 21 U.S.C. §§ 841(a) and (b) and thus an indictment which fails to state the charged amount is fatally defective. Petitioner's memorandum at 23. He is clearly wrong.

 Section 841(a)(1) provides that it is unlawful for any individual to distribute, possess with intent to distribute, etc. a controlled substance. There is no minimum amount required for conviction and the case law has long recognized that it is sufficient for the government to show that a detectable amount is possessed. *United States v. Campbell,* 61 F.3d 976, 979–80 (1st Cir.1995).

Moreover, Robertson's sentence was not premised on application of any statute that required a determination of drug quantity. As noted above, Petitioner was charged with and convicted of violation of §§ 841(a)(1) and 860. That Robertson possessed with intent to distribute heroin within 1000 feet of a school was determined by the jury to have been proven beyond a reasonable doubt. Accordingly, Robertson was subject to the enhanced penalties provided for under §§ 841(b)(1)(C) and 860, including a term of 60 years of imprisonment.

Nonetheless, Robertson was sentenced to a period of incarceration which was well below the default statutory maximum of 20 years specified in § 841(b)(1)(C). Section § 841(b)(1)(C) does not require proof of any specific drug amount. Rather, that subsection is triggered by conviction for any detectable amount of certain controlled substances, including heroin.

Accordingly, although drug amount was relevant to the Court's application of the sentencing guidelines when calculating the appropriate sentence within the applicable statutory limitations, drug quantity did not expose Robertson to a higher statutory maximum sentence. Thus, Petitioner's *Apprendi* claim must be rejected.

*CONCLUSION*

Petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 hereby is denied and dismissed. The Clerk shall enter judgment to that effect forthwith.

It is so ordered.